John A. BETTS, Petitioner–Appellant,

v.

UNITED STATES of America, Respondent–Appellee.

No. 91–3118.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 10, 1992.

Decided Nov. 29, 1993.

Kenneth A. Kozel (argued), LaSalle, IL, for petitioner-appellant.

Thomas E. Karmgard, Frances C. Hulin, Asst. U.S. Attys., Danville, IL, Colin S. Bruce, Asst. U.S. Atty. (argued), Edith C. Harris, Springfield, IL, for respondent-appellee.

Before CUDAHY and ROVNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ILANA DIAMOND ROVNER, Circuit Judge.

Attorney John Betts served fifteen days in jail on a criminal contempt conviction. We reversed his conviction and vacated the sentence, concluding that the court order he purportedly had transgressed was not sufficiently specific to support a conviction for contempt. *In re Betts*, 927 F.2d 983 (7th Cir.1991). Betts then petitioned the district court for a certificate of innocence, the statutory prerequisite to a civil suit against the government for wrongful imprisonment. *See* 28 U.S.C. § 2513. The district court denied the petition, finding that Betts had brought about his own prosecution through "misconduct or neglect." *Betts v. United States*, 770 F.Supp. 457 (C.D.Ill.1991); *see* 28 U.S.C. § 2513(a)(2). We reverse.

## I.  BACKGROUND

We recounted in detail the events that led to Betts' conviction and imprisonment for contempt in our previous opinion. For present purposes, we need reiterate only a few key facts.

Ironically, Betts found himself charged with contempt in the course of defending a colleague, Kenneth Kozel, against identical charges. On Kozel's behalf, Betts had filed a motion to disqualify the district judge assigned to hear the matter. After an initial hearing on May 9, 1989, at which the district court heard argument and set a briefing schedule, the motion was taken under advisement. On June 5, 1989, the court issued an order setting the matter for a final hearing on June 19. Approximately thirty minutes before the June 19th hearing began, the court received in the mail a letter from Betts explaining that neither he nor Kozel would be present:

I have received a notice from you regarding an additional oral argument in this matter for the 19th in Springfield. I just simply am not available for that day regardless of how much I try to re-arrange matters. It had been my understanding from the previous time (May 9th) that you would rule by mail.

So that the administration of justice is not in anyway [sic] delayed, I would respectfully inform the court that my client has waived his right to be there and to present any additional matters before the court. Our position has already been presented thru [sic] prior oral argument and in the written matter submitted previously. We assume that you do not have any questions for us or we would have heard from you in writing. We have nothing further to add.

The hearing proceeded in the absence of the defense, and the court denied the disqualification motion. At the government's request, the court also directed federal marshals to arrest Betts and Kozel for having willfully disobeyed its June 5th order by failing to attend the hearing. Kozel surrendered two days later, but convinced the court to quash the warrant for his arrest on the ground that his presence at the June 19th hearing was not compelled either by statute or by the June 5th order. Betts waited several weeks before he surrendered. He was then released on bond subject to the usual conditions, including a requirement that he appear as commanded at all proceedings on the contempt charge against him.

The district court postponed resolution of the charge against Betts until it had resolved the original contempt charges against Kozel. After Kozel was convicted on two counts of contempt,[1] the district court ordered Betts to

---

1. We later affirmed Kozel's conviction. *United States v. Kozel*, 908 F.2d 205 (7th Cir.1990), *cert.*

appear on December 8, 1989 to show cause why he should not be held in contempt for failure to attend the June 19th hearing.[2] Betts failed to appear on December 8, although Kozel (switching rules from client to counsel) appeared on his behalf. Kozel explained that Betts could not be present because he was hiding somewhere in the Chicago area to elude an outstanding warrant for his arrest in Ford county. The district court rescheduled the hearing for December 28.

Kozel appeared for the December 28th hearing but once again, Betts did not. His patience exhausted, the district judge issued another warrant for Betts' arrest. Federal marshals apprehended Betts on January 18, 1990, and he remained in custody until his trial on the contempt charge six days later. The district court found that Betts had willfully disobeyed its order to appear for the June 19th hearing and was thus guilty of violating 18 U.S.C. § 401(3).[3] *In re Betts,* 730 F.Supp. 942 (D.C.Ill.1990). The court sentenced Betts to three months in prison with all but 15 days suspended and with credit for time served. The court also imposed a six-month term of supervised release and ordered Betts to pay a special assessment of $25.

On appeal, we reversed Betts' conviction and vacated his sentence.[4] We noted that a conviction for criminal contempt requires a willful failure to comply with a lawful order of reasonable specificity. 927 F.2d at 986 (*citing United States v. Burstyn,* 878 F.2d 1322, 1324 (11th Cir.1989), and *United States v. Kozel,* 908 F.2d 205, 208 (7th Cir.1990), *cert. denied,* 498 U.S. 1089, 111 S.Ct. 969, 112 L.Ed.2d 1055 (1991)). In our view, the June

5th order "flunked the 'reasonable specificity' test" (*id.* at 987):

> When an appearance is required, the court's language must be very direct. There should be no doubt or uncertainty as to what is meant.... Here, it is impossible to discern from the way the order is phrased that Betts' personal appearance was *required.* The court neither ordered the parties to appear for argument, nor did it indicate that Betts' presence was indispensable for it to render a decision. If a court order is ambiguous, "it precludes the essential finding in a criminal contempt proceeding of willful and contumacious resistance to the court's authority." *United States v. Joyce,* 498 F.2d 592, 596 (7th Cir.1974). Thus, it cannot be said that Betts' failure to appear at the June 19, 1989 hearing violated a court order, much less that the violation was willful.

The sight of an officer of the court being led away to jail does not make a pretty picture. Some attorneys—and, as we have seen over the past few years, even some judges—break laws and deserve prison sentences. Betts did not. We are certain that the antics of Betts and Kozel tried the patience of the court.... At a time when courts have to engage in judicial "triage" to accommodate the frightening number of drug and other cases clogging their dockets, *see* Labaton, *Scales of Justice Off Balance,* N.Y.Times, Dec. 29, 1989, at A1, col. 1, Betts and Kozel papered several courts (including this one) with numerous filings that distracted us from more pressing matters. This, however, is not a punishable crime. Given the fact the June 5, 1989,

---

denied, 498 U.S. 1089, 111 S.Ct. 969, 112 L.Ed.2d 1055 (1991).

**2.** This notice indicated that the contempt charge against Betts was civil rather than criminal in nature. That designation was erroneous, as the district court later noted, because from the start the contempt citation was based on a *fait accompli* and was not in any way remedial in nature. *In re Betts,* 730 F.Supp. 942, 944 (C.D.Ill.1990). *See generally Hicks on behalf of Feiock v. Feiock,* 485 U.S. 624, 631–32, 108 S.Ct. 1423, 1429–30, 99 L.Ed.2d 721 (1988). The error was corrected following the December 8th hearing, when the court issued an amended notice reflecting that Betts was being charged with criminal contempt.

We point this out solely to clarify that Betts did nothing to cause the contempt charge to be changed from civil to criminal.

**3.** Section 401(3) grants a federal court the discretion to punish, by fine or imprisonment, "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."

**4.** Although Betts had already served his sentence by the time we ruled on his appeal, we concluded that the case was not moot in view of the collateral consequences a criminal contempt conviction might have for an attorney. 927 F.2d at 988.

docket order did not state that the presence of Betts was *de rigueur*, Betts' conviction and resulting sentence cannot stand.

927 F.2d at 987–88 (emphasis in original).

Victorious on appeal, Betts returned to the district court requesting a certificate of innocence under 28 U.S.C. § 2513, which would permit him to seek compensation in the Claims Court for his incarceration. The government opposed the petition, arguing that Betts had brought about his own prosecution through misconduct or neglect. *See* § 2513(a)(2). The district court agreed:

> Betts clearly brought about his own prosecution through his own neglect and misconduct. Betts waited until the last moment to inform the Court that it was simply not convenient for him to appear at a scheduled hearing. After being apprehended, Betts violated a condition of his bond and attempted to avoid prosecution because of an outstanding arrest warrant issued by an Illinois court. In fact, it is uncertain that Betts would ever have appeared had he not been apprehended by the federal marshals.

770 F.Supp. at 460.

Betts appeals from the denial of his petition. We have jurisdiction pursuant to 28 U.S.C. § 1291. *See Rigsbee v. United States,* 204 F.2d 70, 73 n. 3 (D.C.Cir.1953).

## II. ANALYSIS

### A. The Statute

Our analysis necessarily begins with the language of section 2513. A separate statute, 28 U.S.C. § 1495, waives the government's sovereign immunity and allows suits for wrongful imprisonment in the Claims Court.[5] But section 2513 establishes the conditions under which such relief may be granted:

> (a) Any person suing under section 1495 of this title must allege and prove that:
>
> (1) His conviction has been reversed or set aside on the ground that he is not

guilty of the offense of which he was convicted, or on new trial or rehearing he was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction, or that he has been pardoned upon the stated ground of innocence and unjust conviction and

> (2) He did not commit any of the acts charged or his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia, and he did not by misconduct or neglect cause or bring about his own prosecution.

Section 2513(b) requires either a court certificate or a pardon attesting to proof of these facts. Section 2513(e) caps the potential damages at $5,000.

### B. Timeliness of the Appeal

Before reaching the merits, we must consider the government's contention that Betts' appeal is untimely. The district court's order denying the petition for a certificate of innocence was docketed on August 8, 1991. Betts filed a motion to alter or amend the judgment on August 14, 1991, which was denied the same day. The notice of appeal was not filed until September 9, 1991—within the sixty days allowed for appeal in a civil action to which the government is a party, but well beyond the ten days allowed for appeal in a criminal case. *See* Fed.R.App.P. 4(a), (b). The timeliness of the appeal therefore turns on whether the proceedings in the district court were civil or criminal in nature. The government contends that a petition for a certificate of innocence is necessarily a criminal matter because it requires the court to determine whether the petitioner committed a crime. The government also points out that Betts filed his petition under the same miscellaneous case number assigned to his criminal contempt proceeding, rather than seeking to have a separate, civil docket number assigned to the petition.

---

**5.** Section 1495 provides:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned.

■ We must at the outset reject the notion that the type of docket number affixed to the petition by the district court clerk or by the petitioner himself determines whether the proceeding is criminal or civil. Here, of course, the clerk assigned a neutral "miscellaneous" number to the contempt proceeding, and Betts used the same number in filing his section 2513 petition. But even if the petition had been assigned a criminal docket number, it would be of no moment. Motions that are technically filed "in" criminal proceedings may nonetheless be treated as civil for purposes of Appellate Rule 4. *See United States v. Taylor,* 975 F.2d 402, 403 (7th Cir.1992); *see also* 28 U.S.C. § 2255, R. 11 advisory committee's note. The substance and context, and not the label, of the proceeding appealed from determine its civil or criminal character. *See United States v. Craig,* 907 F.2d 653, 656 (7th Cir.), *amended on other grounds,* 919 F.2d 57 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2013, 114 L.Ed.2d 100 (1991).

■ We agree with the Sixth Circuit that a petition for a certificate of innocence is civil in nature. *See United States v. Brunner,* 200 F.2d 276, 279 (6th Cir.1952); *accord McMurry v. United States,* 15 M.J. 1054, 1055 (N.M.C.M.R.1983). A certificate of innocence serves no purpose other than to permit its bearer to sue the government for damages—a quintessentially civil action. Granted, in deciding whether or not to issue the certificate, the district court must consider whether the petitioner is truly innocent— that is, whether he committed the acts charged and, if so, whether those acts constituted a criminal offense (§ 2513(a)(2)); *Rigsbee,* 204 F.2d at 72—but the court makes that determination independent of the outcome of the trial or appeal, taking into account not only whether the petitioner was innocent but also whether he may be deemed responsible for his own prosecution. The independent nature of the inquiry and the additional focus on responsibility suggest that a section 2513

proceeding is an entirely collateral inquiry into the circumstances underlying the conviction. In this respect, we see no reason to treat it differently from the proceeding on a motion to correct, set aside or reduce a sentence under 28 U.S.C. § 2255, which is deemed civil for purposes of Appellate Rule 4. *See United States v. Hayman,* 342 U.S. 205, 209 n. 4, 222, 72 S.Ct. 263, 267 n. 4, 274, 96 L.Ed. 232 (1952); § 2255, R. 11 & advisory committee's note; *see also Craig,* 907 F.2d at 656–57 (petition for writ of error coram nobis). If anything, the reasons for adopting the longer time period for civil appeals are even stronger here, where the petitioner has not only been released from custody, *see id.,* 907 F.2d at 656, but has already succeeded in vacating his conviction.

Betts accordingly had sixty days in which to appeal the district court's ruling, and he did so within that time. The government's motion to dismiss the appeal is therefore denied.[6]

*C. Merits*

■ Whether or not a petitioner is entitled to a certificate of innocence under section 2513 is a question committed to the sound discretion of the district court. *Rigsbee,* 204 F.2d at 72 & n. 2; *Burgess v. United States,* 20 Cl.Ct. 701, 704 (1990); *United States v. Keegan,* 71 F.Supp. 623, 635 (S.D.N.Y.1947). We must affirm the lower court's decision unless the court abused its discretion, or unless the findings underlying its decision were clearly erroneous. *See Rigsbee,* 204 F.2d at 72–73; *cf., e.g., Laborers' Pension Fund v. Dirty Work Unltd., Inc.,* 919 F.2d 491, 494 (7th Cir.1990).

■ We start from the premise that sections 1495 and 2513 were meant to provide compensation only to those who can show that they are innocent of any criminal offense. As the Claims Court has explained:

The purpose of these statutes is to partially right an irreparable wrong done to a

---

6. Betts asks that we sanction the government for moving to dismiss the appeal, contending that it did so in bad faith and for purposes of delay. We discern no improper purpose, however, and although we have rejected the government's argument that this is a criminal matter governed

by Rule 4(b), we have not previously addressed this precise question. Moreover, as we observed in *Taylor,* 975 F.2d at 403, "[d]rawing the line between criminal and civil for purposes of Rule 4(b) is difficult...." Sanctions are therefore not warranted.

United States citizen who was wrongfully imprisoned through financial compensation. *McLean v. United States,* 73 F.Supp. 775, 778 (D.C.S.C.1947). However, the legislative history indicates that Congress did not intend to indemnify every imprisoned person whose conviction had been set aside. *United States v. Keegan,* 71 F.Supp. 623, 635 (D.C.N.Y.1947). Former United States Attorney General Cummings, in a letter embodied in the Report of the Senate Judiciary Committee [Report No. 202, 75th Congress, 1st Session] elaborated on the purpose and intent of the Unjust Conviction Act:

> Ideal justice would seem to require that in the rare and unusual instances in which a person has served the whole or part of a term of imprisonment, is later found to be entirely innocent of the crime of which he was convicted, should receive some redress. On the other hand, reversals in criminal cases are more frequently had on the ground of insufficiency of proof or on the question as to whether the facts charged and proven constituted an offense under some statute. Consequently, it would be necessary to separate from the group of persons whose convictions have been reversed, those few who are in fact innocent of any offense whatever.

*Burgess,* 20 Cl.Ct. at 704. *See also Osborn v. United States,* 322 F.2d 835, 840 (5th Cir. 1963) ("[T]he claimant must be innocent of the particular charge and of any other crime or offense that any of his acts might constitute.") (quoting H.R.Rep. No. 2299, 75th Cong., 3d Sess. 2); *Rigsbee,* 204 F.2d at 72 (petitioner who was acquitted on re-trial after his conviction was reversed "must also show that the trial judge thought he did not commit the acts charged or that, if he did, his acts were justifiable and so not criminal"); *Brunner,* 200 F.2d at 280.

▆▆▆ Our prior opinion makes clear that Betts did not commit a criminal offense. 927 F.2d at 987–88. As we explained, the order scheduling the June 19th hearing was not sufficiently specific to compel Betts' attendance; accordingly, Betts did not violate a court order in failing to attend. *Id.* at 987. In other words, we reversed Betts' conviction because he was truly innocent of contempt, not because there was some defect in the conviction unrelated to his culpability. This is not a case where the conviction was set aside for lack of jurisdiction, expiration of the statute of limitations, use of inadmissible evidence, or failure of proof beyond a reasonable doubt—that is, on a ground that leaves room for the possibility that the petitioner in fact committed the offense with which he was charged. *See Forrest v. United States,* 2 M.J. 870, 874 (A.C.M.R.1976) (O'Donnell, J., dissenting), *aff'd,* 3 M.J. 173 (C.M.A.1977); *see also Rigsbee,* 204 F.2d at 72–73; *Brunner,* 200 F.2d at 280; *Cratty v. United States,* 83 F.Supp. 897, 899–900 (S.D.Ohio 1949). Nor is this a case in which the petitioner's conduct constituted an offense other than the one for which he was tried and convicted. *See Sinclair v. United States,* 109 F.Supp. 529, 531, 124 Ct.Cl. 182, *cert. denied,* 345 U.S. 974, 73 S.Ct. 1123, 97 L.Ed. 1390 (1953); *Weiss v. United States,* 95 F.Supp. 176, 179 (S.D.N.Y.1951).[7] Betts' conduct, quite simply, did not constitute a crime; he is, as the district court put it, "factually innocent." 770 F.Supp. at 459. Betts has therefore satisfied section 2513(a)(1) and the first prong of section 2513(a)(2) by establishing that "[h]is conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted" and that "his acts, deeds, or omissions ... constituted no offense...."

We thus turn to the second prong of section 2513(a)(2) and consider whether Betts caused or brought about his own prosecution by "misconduct or neglect." The language of this subsection has been described as "rather indefinite." *Keegan,* 71 F.Supp. at 638. Neither the statute nor the legislative history elucidates what kind of misconduct or neglect will bar relief, and the case law is sparse.

7. As the district court noted in *Keegan,* "[i]n order for the commission of a crime other than that with which petitioner was charged[ ] to constitute grounds for denial of his certificate, such other crime must have been 'in connection with such charge.' " 71 F.Supp. at 638 (quoting 18 U.S.C. § 730(b), the forerunner to 18 U.S.C. § 2513(b)).

Some courts have suggested that if the petitioner engaged in wrongdoing that, in retrospect, was not illegal, he may be said to have brought about his prosecution through misconduct or neglect within the meaning of section 2513(a)(2). *Weiss,* 95 F.Supp. at 180; *McMurry,* 15 M.J. at 1056; *Forrest,* 2 M.J. at 873. But the statute expressly requires a causal connection between the petitioner's conduct and his prosecution; it does not preclude relief simply because the petitioner engaged in misconduct or neglect, period. In a moral sense, perhaps, a person who engages in conduct that a prosecutor or trial court mistakenly believes to constitute a criminal offense might be said to have "brought about" his own prosecution, on the theory that he would not have been charged had he comported himself in a more upstanding fashion. Yet, construing the statute in that way would require courts to assess the virtue of a petitioner's behavior even when it does not amount to a criminal offense. We decline to interpret section 2513(a)(2) in that fashion.

■ Instead, we conclude that before the petitioner can be said to have caused or brought about his prosecution within the meaning of section 2513(a)(2), he must have acted or failed to act in such a way as to mislead the authorities into thinking he had committed an offense. The clearest example would be the defendant who either falsely confesses to a crime or intentionally withholds exculpatory evidence—in common parlance, one who "takes the fall" for someone else. *Keegan* offers a more comprehensive list: "Examples of the misconduct referred to ... are 'Where there has been an attempt to flee, a false confession, the removal of evidence, or an attempt to induce a witness or an expert to give false testimony or opinion, or an analogous attempt to suppress such testimony or opinion.'" 71 F.Supp. at 638 (quoting Edwin M. Borchard, "State Indemnity for Errors of Criminal Justice"). In these circumstances, a defendant has it within his means to avoid prosecution but elects not to do so, instead acting in such a way as to ensure it. In that sense, he is responsible for his own prosecution and deserves no compensation for his incarceration. The relevant conduct need not always be intentional—thus

the statute's reference to "neglect" as well as "misconduct." Nonetheless, there must be either an affirmative act or an omission by the petitioner that misleads the authorities as to his culpability.

■ The district court cited two misdeeds on Betts' part that purportedly brought about his own prosecution: (1) Betts failed to apprise the court until the eleventh hour that he would be unable to attend the June 19, 1989 hearing; and (2) after his arrest, Betts violated a condition of his bond by failing to appear for two scheduled hearings on the contempt charge, apparently because he was busy attempting to evade the Ford County arrest warrant. 770 F.Supp. at 460. Although we readily agree that this was not fitting behavior for an officer of the court, we cannot find that this misconduct "brought about" or "caused" Betts' contempt prosecution within the meaning of section 2513(a)(2).

Providing the district court no more than thirty minutes' notice of his inability to attend the June 19th hearing did not render Betts responsible for his contempt prosecution. The last-minute character of the notice understandably perturbed the district court and the prosecutor; and perhaps, had the notice been more timely, the prosecutor would not have asked that Kozel and Betts be arrested and the district court would not have pursued the contempt charge against Betts. But to whatever degree the late notice may have raised the ire of the prosecutor and the district court, it did not "cause" or "bring about" his prosecution in the sense of misleading them as to his liability for criminal contempt. The contempt charge was premised on the assumption that Betts had a duty to attend the June 19th hearing. As our previous opinion makes clear, however, the June 5th order scheduling that hearing did not explicitly require Betts' attendance; consequently, he was not legally obliged to appear. 927 F.2d at 987. In this context, the amount of advance notice that Betts gave of his absence is immaterial. The mistaken assessment of the prosecutor and the district court that Betts was obligated to appear at the June 19th hearing had nothing to do with

anything Betts did or failed to do in the way of notice; it was simply an error in their construction of the order setting that hearing.

Although Betts' subsequent failure to appear for the first two hearing dates on the contempt charge may have constituted a violation of his bond, it is likewise irrelevant to whether or not he brought about his own prosecution. The contempt charge against Betts rested solely on his failure to attend the June 19th hearing. *See Betts*, 730 F.Supp. at 945–47. Betts' failure to attend two additional hearings in December 1989 thus had nothing to do with his liability on that charge. Perhaps, had Betts appeared at those hearings and shown contrition, the prosecution and the district court would have dropped the contempt charge. But even if we assume that Betts' continued absences hardened their resolve to pursue the charge, Betts still did not bring about his prosecution in the way section 2513(a)(2) envisions. Whatever cause Betts may have given the district court and the prosecution to believe that he needed strong discipline in order to conduct himself more responsibly, he did nothing that misled the court or the prosecutor into thinking that he had committed criminal contempt in failing to appear on June 19. Their belief, as we have explained, was based on an erroneous interpretation of the order scheduling that hearing, and Betts cannot be deemed responsible for that error.

The district court's finding that Betts brought about his own prosecution through neglect or misconduct was therefore clearly erroneous. Because the record discloses no other basis for denying the petition for a certificate of innocence, we must reverse the district court's decision.

### III. CONCLUSION

Betts' conduct before the district court leaves much to be desired, and we certainly do not suggest that courts faced with similar behavior may not impose appropriate sanctions. But Betts' conduct was not criminal, and although it may have constituted misconduct or neglect, it did not render him responsible for the mistaken decision to prosecute him on the criminal contempt charge. We accordingly reverse the judgment of the district court. Because we conclude that Betts carried his burden of demonstrating that he did not bring about or cause his prosecution through misconduct or neglect, as well as each of the other prerequisites set forth in section 2513, we remand to the district court with directions to grant the petition for a certificate of innocence.

Reversed and Remanded with Directions.