*178 GREGORY, Circuit Judge,
dissenting:
Both the district court and the majority misconstrue § 2513, imposing a standard of their own design in place of what is required by the statute. Congress made clear that in order to recover under § 2513, a petitioner must prove that the charged acts did not constitute a crime. Separately, a petitioner must prove that he did not cause his own prosecution through some other misconduct or neglect. The majority errs by conflating these two elements, requiring a petitioner to show not only that the charged acts were not criminal but also that those acts conform to some amorphous, unwritten code of conduct. Today, through its novel interpretation of the statute, the majority creates a circuit split and encourages the government to prosecute acts it deems “immoral” rather than acts that are criminal under the law.
I.
In order to obtain a certificate of innocence and collect money damages for wrongful imprisonment, a petitioner must satisfy three requirements under 28 U.S.C. § 2513. He must prove: 1) “the record ... of the court setting aside or reversing such conviction” establishes that “his conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted,” § 2513(a)(1); 2) either “he did not commit any of the acts charged” or “his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia,” § 2513(a)(2); and 3) “he did not by misconduct or neglect cause or bring about his own prosecution,” § 2513(a)(2).
The majority relies on the substantial discretion afforded to the district court in determining whether or not a petitioner has successfully met his burden under the statute. See Maj. Op. at 166, 172. However, this case cannot rest on the district court’s discretion because the district court’s failure to correctly apply the statute is an error of law, which is necessarily an abuse of discretion. See Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 317 (4th Cir.2006). Under the majority’s reading, a person who has met the standard set forth in § 2513(a)(1) must not only show that they are truly innocent under the first prong of § 2513(a)(2), but additionally that the same, non-criminal conduct does not constitute negligence under the second prong of § 2513(a)(2). Inserting this extraneous impediment into the statute is unwarranted and unsupported by the law. I therefore would reverse the district court and remand with instructions to grant the certificate of innocence.
A.
The first two requirements under the statute, § 2513(a)(1) and the first prong of § 2513(a)(2), evince Congress’ intent to compensate only those who are “truly innocent,” both of the charges for which they were convicted and any other crime which their conduct could constitute. See Betts v. United States, 10 F.3d 1278, 1284 (7th Cir.1993) (citing Burgess v. United States, 20 Cl.Ct. 701, 704 (1990)) (“Consequently, it would be necessary to separate from the group of persons whose convictions have been reversed, those few who are in fact innocent of any offense whatever.”) (citation omitted).
The majority first contends that it is “unclear” if Graham met his burden to prove his actual innocence under § 2513(a)(1) and the first prong of § 2513(a)(2), asserting that this Court merely held that “the Government failed to prove Graham harbored the requisite intent,” and therefore reversed his convic *179 tion based on insufficiency of the evidence. Maj. Op. at 172 n. 3. However, we made plain in reversing Graham’s conviction that no crime was committed. United States v. Graham, 269 Fed.Appx. 281, 286 (4th Cir.2008).
In overturning his conviction, we held that Graham was not required to return to the Board for permission to convert his sick-leave to cash. See id. at 286 (“Quite simply, Graham’s cash-outs in June and July of 2003 and January and February of 2004 were not contrary to the authority given to him by the Board.”). The majority makes much of the fact that Graham failed to seek the Board’s permission in light of the limitations his employment contract placed on his ability to convert sick-leave to cash. Per the terms of his contract, he was only allowed such a payout only upon illness or termination. However, we explicitly acknowledged those contractual conditions and held that “the Board’s decisions in January, March, and May of 2003 resulted in a de facto amendment that overrode these restrictions.” Id. (emphasis added). Graham’s employment contract term was thus altered by the party empowered to do so— the Board. Our decision reversing Graham’s conviction was therefore not based on some technicality or procedural issue, but rather on finding Graham “truly innocent” of the crime for which he was convicted. “[T]he record of ... the court reversing” Graham’s conviction thus demonstrates that the “conviction has been reversed or set aside on the ground that [Graham] is not guilty of the offense of which he was convicted,” as is mandated by § 2513(a)(1).
Additionally, in no way does the record below support the inference that Graham was guilty of some other, unindicted crime, as is prohibited by § 2513(a)(2). Instead, it is clear that the government pursued every possible charge against Graham. Graham’s indictment contained thirty-nine counts, only one of which resulted in a conviction. Although the majority points to the district court’s recitation of “Graham’s ‘sordid tale of abuse of a position of public trust,’ ” Maj. Op. at 173 (citing United States v. Graham, 595 F.Supp.2d 681, 686), none of that behavior was found to be illegal or even evidence of some further crime of which the government was unable to obtain proof. Compare, United States v. Keegan, 71 F.Supp. 623, 633-34, 635, 639 (S.D.N.Y.1947) (holding that denial of a certificate of innocence is appropriate in cases “where the indictment may fail on the original count, but claimant may yet be guilty of another or minor offense”). It is indisputable that Graham’s conduct “constituted no offense against the United States, or any State, Territory or the District of Columbia,” as is required under § 2513(a)(2).
Because Graham’s conviction was not overturned on procedural grounds, and nothing in the record indicates that the conduct for which Graham was acquitted somehow constitutes a different crime against the United States, Graham clearly met his burden under both § 2513(a)(1) and the first clause of § 2513(a)(2) to show that he was truly innocent.
B.
Beyond the initial question of whether a petitioner is truly innocent, the final clause of § 2513(a)(2) requires a petitioner to show “he did not by misconduct or neglect cause or bring about his own prosecution.” 28 U.S.C. § 2513(a)(2) (emphasis added). “The statute expressly requires a causal connection between the petitioner’s conduct and his prosecution; it does not preclude relief simply because the petitioner engaged in misconduct or neglect period.” Betts, 10 F.3d at 1285 (emphasis added). *180 It must follow that to give meaning to all words in the statute, one cannot “cause” one’s own prosecution by engaging in the very conduct which was found to be noncriminal in the first part of the inquiry. Instead, the second prong of the statute must be referring to some additional conduct, be it intentional or unintentional, willful or neglectful, which misleads the authorities into continuing their investigation of, and ultimately prosecuting, a person later cleared of criminal wrongdoing. To say otherwise conflates the “acts, deeds, or omissions in connection with [the] charge” referenced in the first clause of § 2513(a)(2) and the “misconduct or neglect” required in the second clause.
Congress made clear that the two inquiries are fundamentally different. A petitioner must show that the underlying conduct for which he was charged was “no offense against the United States, or any State, Territory, or the District of Columbia.” § 2513(a)(2). In other words, the only thing that a petitioner must prove regarding his underlying conduct is that it was not a crime. The second clause of § 2513(a)(2) requires the petitioner show that no other, subsequent conduct during the course of the government’s investigation induced the government to commence a wrongful prosecution. Id. Essentially, the “misconduct or neglect” prong is an estoppel defense that protects the United States Treasury against defendants who could have thwarted a prosecution that had already begun, but instead went to prison and then attempted to collect money damages.[1]
Any other reading of the statute would be nonsensical. Why would Congress explicitly specify that a petitioner need only prove that the “acts, deeds, or omissions” for which he was charged “constituted no offense against the United States,” only to further require in the next clause proof that those same acts were not an offense against any private entity, public decorum or social mores? If Congress intended this result, surely it would not have limited a petitioner’s burden regarding the charged acts to offenses against the State; instead it would have remained silent or at minimum broadened the offenses to include more than actual crimes. But it did not do so. Instead, the statute clearly demarcates the sphere of charged acts as separate from the “misconduct or neglect” which “cause or bring about ... [the] prosecution.” [2] Thus, a petitioner could cause his own prosecution by giving a false confession, removing evidence, or by failing to disclose clearly exculpatory evidence within his possession, either intentionally or *181 carelessly. Though this list is not exhaustive, it certainly encompasses conduct which constitutes misconduct and neglect, which, under § 2513(a)(2), could cause the petitioner’s prosecution.
Rather than recognize the separate nature of the two prongs of § 2513(a)(2), the majority conflates the two and affirms the district court’s finding that “Graham was ‘at the very least negligent’ in failing to seek Board approval before obtaining cash for sick leave in 2004, and that this neglect brought about his prosecution.” Maj. Op. at 173 (citing Graham, 595 F.Supp.2d at 686) (emphasis added). In equating “neglect” with “negligence” and then applying it to the charged conduct, the majority renders the first clause of § 2513(a)(2) incoherent or unnecessary, thereby violating a basic cannon of statutory construction. See Corley v. United States, — U.S.-, -, 129 S.Ct. 1558, 1566, 173 L.Ed.2d 443 (2009) (“[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.”) (citation omitted). As stated above, if Congress intended for district courts to reevaluate the charged conduct under a lower standard of culpability, it would not have limited the charged conduct to offenses against the State, nor would it have distinguished the acts associated with the charged conduct from the “misconduct or neglect” that “causes or brings about” the prosecution. It is a distortion of the statute to hold that the very act which was found to be “no offense against the United States” could mislead the government into prosecuting a defendant and thereby preclude recovery. If “charged conduct” and “misconduct and neglect” are really interchangeable as the majority’s reading requires, then there is no foreseeable scenario in which someone wrongfully imprisoned could recover. After all, even a person prosecuted for simply being at the wrong place at the wrong time could easily be said to have been at the wrong place through his own “neglect.”
The majority rejects the Seventh Circuit’s decision in Betts v. United States, which also holds that the “misconduct and neglect” prong does not apply to the charged conduct, but rather requires some additional conduct which “mislead[s] the authorities into thinking [petitioner] had committed an offense.” 10 F.3d at 1285. The majority’s only basis for doing so is that “this narrow reading of subsection (a)(2) ... effectively reads ‘neglect’ out of the statute.” Op. at 174. Instead, it asserts that the “statute’s ‘misconduct or neglect’ language on its face captures noncriminal conduct” and therefore the charged conduct should be reassessed under a negligence standard. Id. at 174. Yet, what the majority fails to recognize in summarily dismissing the reasoning of the one circuit that has specifically interpreted the second clause of § 2513(a)(2) is that Betts specifically accounts for both affirmative misconduct and careless omissions.[3] *182 Betts, 10 F.3d at 1285 (holding that petitioner must have “acted or failed to act in such a. way as to mislead the authorities into thinking he had committed an offense”). Thus, contrary to the majority’s assertion, the Seventh Circuit interpreted the statute in its entirety and gave the statute its. most natural reading.[4]
The majority’s strained statutory construction imputes to Congress a vision of government power that is anathema to the rule of law. Consider the statement that “Graham’s imprudent stewardship of COA, constituted a reasonable basis for Government officers to prosecute,” Maj. Op. at 173, regardless of the fact that being a “sub-par” executive is clearly not criminal.[5] The district court described Graham’s misconduct as including:
Graham operated [COA and All Care] for years as his own personal domain and for the financial benefit of himself and his family. His $185,000 annual salary, excessive by comparison to the pay of others in similar positions, was supplemented by the generous cash-out of sick leave Graham arranged for himself. ... Graham used employees on company time to perform personal services for himself and his family; bought at least one expensive item, a $6,000 television, through COA to get a better price and avoid sales taxes; manipulated a SEP IRA to benefit his family; and assumed a lavish lifestyle including regular visits to a “gentlemen’s club.” “Bailey,” a dancer at Graham’s favorite club, on whom he lavished gifts and money, inquired where his money came from.
Graham, 595 F.Supp.2d at 685. The majority repeats this recitation at page eleven of its opinion. Clearly both the district court and the majority are offended by this conduct. However, being over-paid, living a lavish lifestyle, and frequenting strip clubs, for better or worse, are not crimes in this country.
Only probable cause to believe that a person committed acts that satisfy the elements of a crime gives the government reasonable basis to prosecute. The enduring principles on which our government was founded make it clear that the government does not have a reasonable basis to prosecute a person engaged in immoral or “bad conduct” if that conduct does not satisfy the elements of a crime. It is dangerous to suggest that any time a per *183 son’s conduct offends the sensibilities of three judges or society at large, the government is privileged to incarcerate him. And it strains credulity to suggest that the United States Congress intended a statute to be construed as such.
The purpose of § 2513 is to limit compensation for unjust imprisonment to those who are truly innocent and to estop those who elect not to avoid prosecution, by their actions or omissions, from relief. In light of the error of law committed by the district court in interpreting § 2513, I would reverse and remand with instructions to grant the certificate of innocence. Thus, I respectfully dissent.

. The majority's reading of my view in dissent continues to ignore the fact that the statute requires a petitioner to show that his "misconduct or neglect” did not cause his prosecution. In zeroing in on the first clause of § 2513(a)(2), the majority repeatedly asserts that "Graham's failure in 2004 to seek Board approval to modify his contract so as to convert sick leave to cash certainly constitutes ... an act or 'omission.' ” Maj. Op. at 177. One can certainly speculate as to whether or not Graham's conduct at COA constituted "misconduct or neglect.” But the statute requires something more: a causal link between those actions and the prosecution at issue. Neither the district court nor the majority has or can point to how Graham's conduct, for which he was charged and ultimately acquitted, caused his prosecution.

. It is important to distinguish between conduct that could cause a government investigation and that which would cause a prosecution. Improper corporate stewardship could be grounds for government investigation to determine whether or not a crime has been committed. It would not be reasonable, however, to prosecute unless the government had probable cause to believe that the defendant's conduct satisfied all of the elements of the crime. This is another example of the majority’s failure to analyze the words actually used by Congress in the statute.

. When Congress uses "neglect” without otherwise specifying, it means "carelessness.” Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P’ship, 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) ("The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness.”). The majority reads neglect out of the statute and replaces it with "negligence.” It must do so in order to maintain that the "misconduct or neglect” prong refers to the same conduct as the "acts charged” prong, while at the same time reading the statute to allow recovery for a person charged with completely non-culpable conduct, i.e., simple carelessness. The majority can only have it both ways by replacing the word actually used by Congress with a word that it would prefer.
The much easier reading of the statute, and the one that gives Congress' intended effect to the word "neglect,” is to read the "acts charged” and "misconduct or neglect” *182 prongs separately. Under this reading, an individual prosecuted for the crime of simple carelessness, even though there is not and has never been a crime of simple carelessness, could rightfully recover for wrongful prosecution. On the other hand, the individual wrongfully prosecuted for a crime he truly did not commit, but who nonetheless carelessly fails to turn over exculpatory evidence in his possession, would be barred from recovery. This application gives meaning to every word in the statute and is consistent with the array of estoppel defenses available in the law.

. Even if we were to assume arguendo that neglect somehow constitutes negligence, Graham's failure to seek Board approval for converting sick-leave to cash cannot be considered negligent when there was no duty breached. The majority did not even define the standards under which it measured Graham’s alleged negligent conduct. In order for a cause of action to lie in negligence, the proponent must show there was a duty of care owed. In reversing Graham's conviction, we held that Graham was not required to return to the Board to obtain permission to cash-out his sick leave, see Graham, 269 Fed. Appx. at 286, and therefore had no duty to return and get permission. Thus, even under the majority's own reading of the statute, Graham would have met the requirements and should have been issued a certificate of innocence.

. Again, conduct which is not criminal, but leads to a government investigation, is categorically different from conduct which causes one's prosecution.