2020 IL App (2d) 190475
No. 2-19-0475
Opinion filed November 30, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 95-CF-2075 |
| WILLIAM E. AMOR, | ) ) ) | Honorable Robert A. Miller, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Zenoff and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant, William E. Amor, appeals the trial court's order denying his petition for a certificate of innocence under section 2-702 of the Code of Civil Procedure (735 ILCS 5/2-702 (West 2016)). We affirm.

¶ 2                              I. BACKGROUND

¶ 3     On September 10, 1995, Marianne Miceli died of carbon monoxide intoxication from inhaling smoke and soot during a fire in her apartment. Defendant and his wife, Tina, who was also Miceli's daughter, lived in Miceli's apartment but had gone out for the evening shortly before the fire started. Defendant was questioned about the matter several times in the next several weeks.

He denied having any information about the fire or any knowledge regarding any life insurance that Miceli had. Gradually, his story began to change, as he remembered spilling some vodka and possibly leaving a lit cigarette in a nearby ashtray. Immediately upon his release from a two-week stint in jail on a traffic warrant, detectives extensively questioned defendant again. During this questioning, detectives allowed a process server to serve defendant with Tina's petition for divorce. They also told defendant that Tina believed that he started the fire and was responsible for her mother's death. Eventually, defendant put his head on the table and said that the fire was his fault. Defendant stated that he had knocked a lit cigarette onto a pile of newspapers onto which he had previously spilled some vodka; he heard it sizzle and saw it smolder. He deliberately left the pile to smolder while he and Tina left to go to the movies. Defendant gave audiotaped statements to both the police and an assistant state's attorney. He eventually said that he had intentionally knocked a lit cigarette onto vodka-sodden newspapers because he wanted to get Miceli's insurance proceeds due to the apartment's unbearable living arrangements.

¶ 4      The State charged defendant with one count of first-degree murder (720 ILCS 5/9-1(a)(3) (West 1994)) and one count of aggravated arson (*id.* § 20-1.1(a)(1)). The court denied defendant's motion to suppress statements and quash his arrest. A jury subsequently found him guilty of both counts. We affirmed defendant's conviction for first-degree murder, specifically finding, among other things, that (1) the trial court's determination that defendant's inculpatory statements were voluntary was not against the manifest weight of the evidence and (2) defendant was proven guilty beyond a reasonable doubt. See *People v. Amor*, No. 2-97-1189 (1999) (unpublished order pursuant to Illinois Supreme Court Rule 23).[1]

_____

[1] This court reversed defendant's conviction of and sentence for aggravated arson, pursuant

¶ 5      Defendant filed a petition for postconviction relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2000)). The petition raised issues of ineffective assistance by both trial and appellate counsels. The court dismissed the petition at the second stage, and we affirmed the dismissal. See *People v. Amor*, No. 2-01-0962 (2002) (unpublished order pursuant to Illinois Supreme Court Rule 23).

¶ 6      Defendant then filed a successive petition for postconviction relief in 2015, raising an issue of actual innocence. This petition proceeded to a third-stage evidentiary hearing, after which the trial court held:

> "In the instant case there was evidence of motive and intent: consider, for example, the need for money to obtain a new residence and start a new life; knowledge of at least some insurance; and the disabling of the fire detector. There was also evidence of consciousness of guilt: consider, for example, defendant's lies about insurance, denial of drinking, denials concerning Tina and the lighter fluid, and the evolution of his statements generally. But all that being said, there can be no question that the lynchpin of the State's case at trial was the defendant's confession, which the State and Defense experts today agree is scientifically impossible. Whatever the reasons for the Defendant's scientifically impossible confession, the new evidence places the evidence presented at trial in a different light and undercuts this Court's confidence in the factual correctness of the guilty verdict."

The court then vacated defendant's conviction and continued the matter for further proceedings.

¶ 7      The case proceeded to a bench trial. While most of the testimony was identical to that at the first trial, there was new testimony regarding the fire's cause and origin. Defendant presented

---

to the "one act, one crime" doctrine.

three experts on that issue. One opined that a smoldering cigarette left in a recliner caused the fire. Another testified that a smoldering cigarette was unlikely to have ignited the fire and believed that investigators should have classified the fire as "undetermined." The third also opined that the fire's cause classification should have been "undetermined." All three experts agreed—defendant could not have started the fire in the manner described in his confession. The State presented further expert testimony that the fire's point of origin was near where defendant had confessed to starting the fire. However, the expert concluded that the cause of the fire was open flame ignition by human hands. This testimony indicates an intentionally set fire—not an accidentally set fire.

¶ 8       The trial court found defendant not guilty on all charges. In its extensive written order, the trial court addressed the issue of defendant's confession:

"But there are also the defendant's statements over time to Officers Cross, Gurrerri, Carlson, Cunningham and [Assistant State's Attorney] Nigohosian. The defendant's version of events evolved over time: starting with outright denials; moving to suggestions of accident; and ultimately ending with an admission to setting the fire for insurance proceeds. The problem with the defendant's ultimate admission, of course, is that he confesses to a scenario that both defense and state experts agree is scientifically impossible. Clearly the defendant's vodka soaked newspaper/cigarette story, believed by the investigating officers and fire experts who testified in 1997, cannot serve as a basis for a finding of guilt with the advances in modern fire science knowledge. That having been said, it must nevertheless be determined [*sic*] the import of defendant's confession that he started the fire, notwithstanding that he admitted doing so in an impossible manner."

¶ 9       Defendant then filed a petition for a Certificate of Innocence under section 2-702 of the Code of Civil Procedure (735 ILCS 5/2-702 (West 2016)), seeking a certificate of innocence along

with the expungement and impounding of his criminal records. The State filed a motion to dismiss the petition, which the trial court granted. This appeal followed.

¶ 10                                    II. ANALYSIS

¶ 11    Defendant now contends that the trial court erred in dismissing his petition for a certificate of innocence. To obtain a certificate of innocence under section 2-702, a defendant must prove by a preponderance of the evidence that (1) he was convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence; (2) the judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either the petitioner was found not guilty at the new trial or the petitioner was not retried and the indictment or information dismissed; (3) he is innocent of the offenses charged in the indictment or information or his acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State; and (4) the petitioner did not by his own conduct voluntarily cause or bring about his conviction. *Id.* § 2-702(g); *People v. Dumas*, 2013 IL App (2d) 120561, ¶ 15. Generally, granting a certificate of innocence is within the sound discretion of the court. *Dumas*, 2013 IL App (2d) 120561, ¶ 17.

¶ 12    In dismissing defendant's petition, the trial court ruled as follows:

        THE COURT: All right. I've considered the filings of the parties. I've considered the applicable case and statutory law and the relevant portions of the Illinois Criminal Code. I have reviewed the exhibits that were provided, and I have taken a look at the file in so much as—I've looked at Judge Brennan's decision regarding the bench trial that occurred.

Certainly there are issues in this case that are somewhat unique. For example, having the defendant served with divorce papers during the course of a homicide interrogation isn't something I've ever seen before, heard of, read about, or even seen on fictional TV. Yet, that was considered by the appellate court, and the appellate court took a look at the defendant's education, the fact that he was provided with sustenance and, otherwise, apparently, treated fairly, according to the appellate court, and they found that his statements to the police were freely and voluntarily given.

I agree with the defendants [*sic*] that it's an unreliable confession, but that doesn't seem to equate with the defendant involuntarily providing a confession, so I'm not ruling on the first three paragraphs of the defendant's burden.

I am taking a look at whether or not the petition[er] did or did not by [his own] conduct voluntarily cause or bring about his conviction, and I believe that the defendant did act in such a manner voluntarily to bring about his or her own conviction. I'm only focusing on that. It appears the defendant did give a statement—gave a statement to the police. It wasn't the effect—wasn't the product of any physical abuse or such verbal conduct or sleep deprivation or any other type of interrogation tactic that would bring about an involuntary confession.

Although it certainly has issues, as the appellate court noted, I can't find anything about the confession, despite [its] unreliability, that would make it the product of either illegal police conduct or some other activity that would cause the statement to be something other than a voluntary statement; and, therefore, I do find that the defendant brought about his conviction through his own conduct; and, therefore, I'm granting the State's motion to dismiss.

Sorry, sir."

¶ 13    Defendant first argues that we must review *de novo* instead of reviewing the trial court's decision for an abuse of discretion. According to defendant, because the trial court's dismissal of his petition "was based on an erroneous interpretation of the statute and the legal determination that [defendant's] confession barred him from relief," we must review *de novo* the dismissal. See, *e.g.*, *People v. Fields*, 2011 IL App (1st) 100169, ¶ 18. According to defendant, the trial court misinterpreted the certificate of innocence statute and committed legal error by determining that, "because a movant gave a confession deemed 'voluntary' for Fifth Amendment purposes[,] he is not entitled to a certificate of innocence."

¶ 14    We disagree. Our review of the trial court's ruling does not show either legal misinterpretation or improper legal conclusion. The trial court did not rule that the statute requires, in all cases, that a voluntary confession prohibits the issuance of a certificate of innocence. Instead, the court looked at "whether or not the petition[er] did or did not by [his own] conduct voluntarily cause or bring about his conviction, and I believe that the defendant did act in such a manner voluntarily to bring about his or her own conviction." The trial court did not show any misunderstanding of the statute and tailored its decision per the statutory requirements. We will still review its decision under an abuse-of-discretion standard.

¶ 15    Defendant next argues that he proved by a preponderance of the evidence that he is innocent of the offenses charged in the indictment. See 735 ILCS 5/2-702(g) (West 2016). However, this element of the cause of action for a certificate of innocence is not at issue before us. The trial court specifically stated, "I'm not ruling on the first three paragraphs of the defendant's burden." These paragraphs included the element of defendant's innocence. Defendant asserts that the trial court "likely ignored this issue in making its ruling because the record could not be clearer

that Amor has proven his innocence by more than a preponderance of the evidence." Such speculation is unnecessary; what is abundantly clear is that the only basis upon which the trial court dismissed defendant's petition was that defendant brought about his conviction by his conduct. The trial court did not make any findings of fact or conclusions of law on the "innocence" element, nor did it make any ruling on it that was detrimental to defendant's cause. If anything, we will assume—in the absence of such findings, conclusions, and rulings—that defendant did prove those other elements by a preponderance of the evidence.

¶ 16    Defendant then argues that the trial court erred in determining that defendant voluntarily brought about his conviction. " '[B]efore the petitioner can be said to have caused or brought about his prosecution *** he must have acted or failed to act in such a way as to mislead the authorities into thinking he had committed an offense.' " *Dumas*, 2013 IL App (2d) 120561, ¶ 18 (quoting *Betts v. United States*, 10 F.3d 1278, 1285 (7th Cir. 1993), citing 28 U.S.C. § 2513(a)(2) (1988)). "[T]here must be either an affirmative act or an omission by the petitioner that misleads the authorities as to his culpability." *Betts*, 10 F.3d at 1285. *Betts* suggests that "[t]he clearest example would be the defendant who either falsely confesses to a crime or intentionally withholds exculpatory evidence—in common parlance, one who 'takes the fall' for someone else." *Id.* It then quotes from *United States v. Keegan*, 71 F. Supp. 623, 638 (S.D.N.Y. 1947) for additional examples of such acts or omissions, including an attempt to flee, a false confession,[2] the removal of evidence, an attempt to induce a witness or an expert to give false testimony or a false opinion, and an attempt to suppress such testimony or opinion.

---

[2] Inexplicably, defendant omits this example when citing this very same passage in *Betts*.

¶ 17    Defendant notes that the trial court's determination that he voluntarily brought about his conviction was based on his giving a statement to the police admitting his culpability for the crime. Relying on the cases of *People v. Simon*, 2017 IL App (1st) 152173, and *People v. Glenn*, 2018 IL App (1st) 161331, defendant then makes the following bold assertion:

> "This is wrong as a matter of law, as every Illinois court who [*sic*] has considered this issue has held. A confession, regardless of whether it is ever suppressed, and even in circumstances where a defendant goes on to plead guilty after proper and constitutional admonishments by the court, is not enough to demonstrate that a petitioner voluntarily brought about his own conviction."

¶ 18    This assertion is patently false, and the cases upon which defendant relies do not in any way support such a broad assertion. In *Simon*, the defendant alleged that he was either duped or coerced by attorneys to provide a filmed confession and eventually pleaded guilty to charges of murder and voluntary manslaughter in the attorneys' attempt to get the man already convicted of the murders (and facing execution) out of prison. After the defendant's convictions were subsequently vacated, he sought a certificate of innocence. The trial court denied the defendant's petition because he did not establish that he did not voluntarily cause his conviction and that his claim did not involve any allegations of misconduct on behalf of the State. *Simon*, 2017 IL App (1st) 152173, ¶ 21. The appellate court vacated the denial and remanded the cause for further proceedings because (1) the trial court erroneously relied on inadmissible evidence, outside the evidentiary record, in denying the petition (*id.* ¶ 23) and (2) the appellate court disagreed with the trial court's determination that, because the State was not involved in the wrongdoing that led to the defendant's wrongful incarceration, the defendant could not obtain relief in the court of claims (*id.* ¶ 28). The court held:

"Notably, we are not making any determination regarding the merits of petitioner's petition, and our ruling does not mean that, after conducting the hearing, the court cannot deny the certificate of innocence for the reason that petitioner failed to establish that he caused his own conviction based on admissible, probative evidence." *Id.* ¶ 27.

¶ 19   In *Glenn*, the defendant pleaded guilty to narcotics charges fraudulently brought by the police. The defendant was later pardoned by Governor Pat Quinn, although the governor did not expressly find the defendant's innocence as the pardon's basis. *Glenn*, 2018 IL App (1st) 161331, ¶ 10. The trial court vacated the convictions and the guilty pleas and ordered the defendant's criminal record expunged. The trial court subsequently denied the defendant's petition for a certificate of innocence because she was sentenced to probation, not a term of imprisonment. *Id.* ¶ 11. The appellate court disagreed and interpreted the section 2-702 requirement that the petitioner be sentenced to a term of imprisonment to include petitioners sentenced to probation; accordingly, on appeal, the trial court's judgment was reversed, and the cause was remanded with directions to grant the certificate of innocence. *Id.* ¶ 24.

¶ 20   Contrary to defendant's claim, neither of those cases stands for the proposition that "[a] confession, ***, is not enough to demonstrate that a petitioner voluntarily brought about his own conviction." *Simon* explicitly held that its ruling "does not mean that, after conducting the hearing, the court cannot deny the certificate of innocence for the reason that petitioner failed to establish that he caused his own conviction based on admissible, probative evidence." *Glenn* did not involve the issue of a confession or the defendant voluntarily causing or bringing about her conviction by her conduct. Defendant's presentation of, and reliance on, these cases for the claim that he makes is not well-taken.

¶ 21    Defendant spends much time on anecdotal circuit court rulings in other certificate-of-innocence cases. First, we note that trial court decisions are not binding precedent. See *People v. Mann*, 397 Ill. App. 3d 767, 769 (2010). Further, these cases are *sui generis*; just because some other defendant's confession was held not to have brought about his conviction does not influence us here. We decide cases on their unique facts and circumstances.

¶ 22    Defendant next argues that using a fifth-amendment-voluntariness standard is improper in determining whether a defendant voluntarily caused or brought about his conviction. According to defendant, a finding that one did not voluntarily contribute to one's conviction "does not require a legal finding that a confession should be excluded or suppressed."

¶ 23    Defendant again cites *Dumas* and *Betts* and their list of possible acts or omissions that could mislead the authorities as to a defendant's culpability, again failing to include, let alone address, these cases' listing of a *false* confession as such a possible act. Defendant even accuses the State of "blatantly" misrepresenting the holding in *Betts* and "conveniently" stopping short of providing a full quotation from the case. However, it is defendant who misreads and misrepresents *Betts*. *Betts* makes two separate references to *false* confessions in its list: first, the "clearest example," which it refers to as taking the fall for someone, and, second, within its quote from *Keegan*, which is not modified or explained as anything beyond "a false confession." See *Betts*, 10 F.3d at 1285. Contrary to defendant's argument, *Betts* does not bar relief only "for the wrongfully convicted who intentionally take the fall for another to mislead authorities."

¶ 24    We agree with defendant that prior rulings on a statement's voluntariness are not dispositive and of *res judicata* effect. However, this argument is a straw man; there is no indication that the trial court viewed the prior rulings regarding defendant's confession as dispositive or as *res judicata*. The trial court's ruling acknowledged our holding on defendant's direct appeal that

the trial court's finding that defendant made voluntary inculpatory statements was not against the manifest weight of the evidence. However, the court did not just assert this as the basis for dismissing defendant's petition. The court detailed its own investigation, stating that it considered the filings, statutory and case law, exhibits, and the decision rendered after defendant's retrial. The court acknowledged the "unique" issues in this case, including the serving of divorce papers during the questioning and the later-determined unreliability of the confession. Even considering these issues, the court concluded:

> "I can't find anything about the confession *** that would make it the product of either illegal police conduct or some other activity that would cause the statement to be something other than a voluntary statement; and, therefore, I do find that the defendant brought about his conviction through his own conduct; and, therefore, I'm granting the State's motion to dismiss."

"A court abuses its discretion only if it acts arbitrarily, without the employment of conscientious judgment, exceeds the bounds of reason and ignores recognized principles of law; or if no reasonable person would take the position adopted by the court." *Payne v. Hall*, 2013 IL App (1st) 113519, ¶ 12. This trial court did not surrender its discretion; it exercised its discretion after investigating the facts and law, and it made a decision. This decision was not an abuse of discretion. We find no error here.

¶ 25                                    III. CONCLUSION

¶ 26    For these reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 27    Affirmed.

---

**No. 2-19-0475**

---

| | |
|---|---|
| **Cite as:** | *People v. Amor*, 2020 IL App (2d) 190475 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 95-CF-2075; the Hon. Robert A. Miller, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Jon Loevy, Tara Thompson, and Lauren Myerscough-Mueller, of The Exoneration Project at the University of Chicago Law School, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Steven J. Lupa, Assistant State's Attorneys, of counsel), for the People. |

---