# Illinois Official Reports

## Appellate Court

---

### *People v. Washington*, 2021 IL App (1st) 163024

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WAYNE WASHINGTON, Defendant-Appellant. |
| District & No. | First District, First Division<br>No. 1-16-3024 |
| Filed<br>Rehearing denied | June 28, 2021<br>November 12, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 93-CR-14676; the Hon. Domenica Stephenson, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Steven A. Greenberg and Michael P. Hohenadel, of Steven A. Greenberg & Associates, Ltd., of Chicago, for appellant.<br><br>No brief filed for appellee. |
| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion.<br>Justice Coghlan concurred in the judgment and opinion.<br>Presiding Justice Walker dissented, with opinion. |

**OPINION**

¶ 1    Petitioner, Wayne Washington, appeals from the denial of his petition for a certificate of innocence filed pursuant to section 2-702 of the Code of Civil Procedure (Code) (735 ILCS 5/2-702 (West 2016)). Washington argues that the circuit court abused its discretion in denying his petition for a certificate of innocence because the court improperly imposed a procedural bar when it found that a petitioner, who pled guilty, could not receive a certification of innocence and because the trial court relied on improper evidence. For the following reasons, we affirm the circuit court's judgment.

¶ 2                                    I. BACKGROUND

¶ 3    Washington and codefendant Tyrone Hood[1] were convicted of the May 1993 armed robbery and murder of college basketball star Marshall Morgan, Jr. Washington had a jury trial where the jury failed to reach a verdict, resulting in a mistrial. Hood was convicted following a bench trial and was sentenced to 75 years' imprisonment.[2] After Hood was convicted and sentenced, Washington entered a plea of guilty in exchange for a 25-year sentence.

¶ 4    On December 5, 2003, Washington filed a *pro se* petition for *habeas corpus* relief, which was denied on February 27, 2004. He subsequently filed a *pro se* petition for postconviction relief alleging actual innocence based on newly discovered evidence. On July 2, 2013, the petition was dismissed because Washington had served his sentence, had been released, and therefore had no standing to bring the petition.

¶ 5    Hood fought his conviction through a series of appeals and postconviction petitions. After a 2014 investigative article in *The New Yorker*, then Governor Quinn commuted Hood's sentence. The January 12, 2015, commutation order indicated that Governor Quinn was granting "commutation of sentence to time considered served leaving the mandatory supervised release period in effect."

¶ 6    Thereafter, on February 9, 2015, the State, on its own motion, moved to vacate Hood's and Washington's convictions and grant them a new trial. The State then nol-prossed the charges against both Hood and Washington pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2014)).

¶ 7    Subsequently, Washington promptly filed a petition for a certificate of innocence in the circuit court.

¶ 8                            A. Washington's Petition

¶ 9    Washington's verified petition for a certificate of innocence was a two-page document to which he appended a prior section 2-1401 petition setting forth claims nearly identical to codefendant Hood's. See *People v. Hood*, 2021 IL App (1st) 162964. His petition stated that "he/she will establish by a preponderance of the evidence" that he was convicted of murder,

---

[1]Hood's (appeal No. 1-16-2964) and Washington's (appeal No. 1-16-3024) cases were originally consolidated in this court upon the parties' request. We have vacated that consolidation and will consider each petitioner's case separately.

[2]A lengthy discussion of the evidence adduced at Hood's trial can be found in *People v. Hood*, No. 1-97-0342 (1999) (unpublished order under to Illinois Supreme Court Rule 23).

he completed his sentence of imprisonment, his conviction was vacated, the indictment was dismissed, and he did not, "by [his] own conduct, voluntarily cause or bring about [his] conviction."

¶ 10 Pursuant to statute, the Illinois Attorney General was notified of the petition and did not intervene. The State's Attorney's office was also notified of the petition and appeared only for the purpose of advising the circuit court that it would not oppose Washington's petition. The circuit court initially denied the petition without a hearing. Petitioner moved for reconsideration. The circuit court struck its previous order and, at a joint hearing with Hood, allowed petitioners to present evidence in support of their petitions.

¶ 11                     B. Washington's Evidence in Support of Petition

¶ 12 Washington adopted Hood's testimony. See *id.* He stated that he served 12 years' imprisonment for Marshall Morgan's murder. Washington stated that he knew Hood from the neighborhood but denied being with Hood on the night of the murder. He had nothing to do with Marshall's murder. He was inside a neighborhood convenience store when detectives came into the store, handcuffed Hood, and took him to a police car. A short time later, after viewing his identification, detectives asked Washington to come to the station to answer questions. Hood was still in the backseat of the car. Washington was "wrestled to the car" and handcuffed.

¶ 13 He was taken to a police station for a short time and then transported to the police station at 51st Street and Wentworth Avenue. Hood was in the car with him. Hood looked like he had been beaten up. Washington was taken to an interrogation room and was handcuffed to the chair. He sat there for several hours. Detective Boudreau came in, asked him about a murder, and told him that he and Hood were in a lot of trouble. Washington told Detective Boudreau that he did not know anything about a murder. Washington was "pushed around, slapped around. The chair was knocked over a few times, picked back up, knocked over again."

¶ 14 Washington ended up giving a statement to the police implicating himself. The police told him that if he said certain things, he could go home. Washington told his lawyer about what happened at the police station. His lawyer filed a motion to suppress but it was denied.

¶ 15 Washington testified that he pleaded guilty because he knew that Hood had been sentenced to 75 years' imprisonment and that if he took the deal, he would be 32 years old when he came home and would still have "a chance at a life."

¶ 16 After a full hearing, the circuit court denied Washington's petition for a certificate of innocence. Washington timely filed his appeal.

¶ 17                                    II. ANALYSIS

¶ 18 We consider this matter on appellant's briefs only. The State did not participate in the proceedings in the circuit court and has not participated in either appeal.

¶ 19 Section 2-702(b) of the Code provides that

"[a]ny person convicted and subsequently imprisoned for one or more felonies by the State of Illinois which he or she did not commit may, under the conditions hereinafter provided, file a petition for certificate of innocence in the circuit court of the county in which the person was convicted. The petition shall request a certificate of innocence

finding that the petitioner was innocent of all offenses for which he or she was incarcerated." 735 ILCS 5/2-702(b) (West 2016).

¶ 20 In order to obtain a certificate of innocence under section 2-702(g) of the Code, a petitioner must prove by a preponderance of the evidence that:

"(1) the petitioner was convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;

(2)(A) the judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either the petitioner was found not guilty at the new trial or the petitioner was not retried and the indictment or information dismissed; ***;

(3) the petitioner is innocent of the offenses charged in the indictment or information ***; and

(4) the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction." *Id.* § 2-702(g).

See also *People v. Fields*, 2011 IL App (1st) 100169, ¶ 13.

¶ 21 "If the court finds that the petitioner is entitled to a judgment, it shall enter a certificate of innocence finding that the petitioner was innocent of all offenses for which he or she was incarcerated." 735 ILCS 5/2-702(h) (West 2016). A person who secures a certificate of innocence may file a petition in the state's Court of Claims seeking compensation. *Rodriguez v. Cook County*, 664 F.3d 627, 630 (7th Cir. 2011) (citing 735 ILCS 5/2-702(a) (West 2008)); see also *Betts v. United States*, 10 F.3d 1278, 1283 (7th Cir. 1993) ("[a] certificate of innocence serves no purpose other than to permit its bearer to sue the government for damages").

¶ 22 In determining whether a petitioner has showed by a preponderance of the evidence that he is innocent of the charged offenses, the trial court must consider the materials attached to the petition in relation to the evidence presented at trial. *Fields*, 2011 IL App (1st) 100169, ¶ 19. In a certificate of innocence hearing, the court may take judicial notice of prior sworn testimony or evidence admitted in the criminal proceedings related to the convictions that resulted in the alleged wrongful incarceration, if the petitioner was either represented by counsel at such prior proceedings or the right to counsel was knowingly waived. 735 ILCS 5/2-702(f) (West 2016). Whether or not a petitioner is entitled to a certificate of innocence is generally a question left to the sound discretion of the court. *Rudy v. People*, 2013 IL App (1st) 113449, ¶ 11. "An abuse of discretion occurs only where the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." *People v. Rivera*, 2013 IL 112467, ¶ 37. However, "[t]he interpretation of a statute is a question of law that is reviewed *de novo*." *Fields*, 2011 IL App (1st) 100169, ¶ 18.

¶ 23 The circuit court denied Washington's petition for a certificate of innocence because it found that Washington had failed to satisfy the fourth prong of section 2-702(g) "because, by his own conduct, he voluntarily brought about his own conviction by giving a statement to police and pleading guilty." The court dismissed Washington's claims of police coercion because Washington gave differing accounts of what occurred and therefore the court questioned his credibility. Washington now argues that the court improperly imposed a procedural bar that is not included in section 2-702(g), arguing that the circuit court held that a petitioner who pleaded guilty cannot receive a certificate of innocence. In addition,

Washington argues that he presented unrebutted and uncontradicted evidence demonstrating his innocence and the circuit court relied on evidence that was not part of the record.

¶ 24 The fundamental rule of statutory interpretation is to give effect to the intent of the legislature. *People v. Smith*, 236 Ill. 2d 162, 166-67 (2010). The best indicator of legislative intent is the language of the statute, which must be given its plain and ordinary meaning. *Id.* at 167. If the language in the statute is clear and unambiguous, it must be applied as written without resorting to extrinsic aids of construction. *People v. Dabbs*, 239 Ill. 2d 277, 287 (2010). The interpretation of a statute is a question of law that is reviewed *de novo*. *Smith*, 236 Ill. 2d at 167.

¶ 25 The plain and ordinary meaning of 2-702(g)(4) is clear. A defendant who has pled guilty "cause[d] or [brought] about his or her conviction" (735 ILCS 5/2-702(g)(4) (West 2016)) and is not entitled to a certificate of innocence. See also *People v. Allman*, 2013 IL App (1st) 120300-U, ¶ 19 ("Defendant also cannot obtain a certificate of innocence because he pled guilty."). We see no other way to interpret this provision. We find petitioner's contention that the circuit court denied the certificate because a plea of guilty is a procedural bar is simply not supported by the record.

¶ 26 The circuit court correctly stated that it was Washington's burden to prove by a preponderance of the evidence that he did not cause or bring about his conviction. His evidence on this score failed because his testimony that his confession was the result of police coercion was not credible and was otherwise uncorroborated. The circuit court was entitled to give whatever weight it deemed appropriate to the testimony at the hearing and to the affidavits, stipulations, and other exhibits offered in support of the petition. Critically, the only testimony the circuit court heard on the issue of police coercion came from the petitioner, and a finding that he was not credible was within the circuit court's discretionary authority. Clearly, the circuit court was not required to accept Washington's hearing testimony on its face and his previous contradictory sworn testimony when he entered his guilty plea cannot be ignored. See *People ex rel. Brown v. Baker*, 88 Ill. 2d 81, 85 (1981) (explaining that uncontradicted testimony may be disregarded when it is "contradicted, either by positive testimony or by circumstances," is "inherently improbable," or where a witness has been impeached). The circuit court's finding that Washington was not credible was the basis for the court's conclusion that Washington's handwritten confession and guilty plea voluntarily caused or brought about his conviction. The circuit court did not have to credit Washington's explanation for why he pleaded guilty or ignore the fact that he never claimed his plea of guilty was anything but voluntary. We cannot find that the circuit court's judgment is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it.

¶ 27 To be clear, this is not an issue of whether Washington proved by a preponderance of the evidence that he is innocent under the Code. The issue is whether Washington proved by a preponderance of the evidence the fourth statutory requirement for the issuance of a certificate of innocence: petitioner's conduct did not voluntarily cause or contribute to his conviction.

¶ 28 We have recently found that a petitioner who gave a detailed confession leading to his conviction could not obtain a certificate of innocence, even though postconviction expert testimony established the crime could not have been committed in the way petitioner detailed, and as a result, petitioner was found not guilty at a subsequent trial. In *People v. Amor*, 2020 IL App (2d) 190475, the defendant was charged with murder and arson. Defendant made a number of statements confessing to a series of acts that were critical to his conviction. *Id.* ¶ 3.

A successive postconviction petition was granted, and a new trial was ordered, based on scientific evidence that the fire could not have been started in the way defendant described, which " 'undercuts this Court's confidence in the factual correctness of the guilty verdict.' " *Id.* ¶ 6. On retrial, the circuit court found defendant not guilty, finding, in part, that defendant "confesse[d] to a scenario that both defense and state experts agree is scientifically impossible.' " *Id.* ¶ 8. We affirmed the dismissal of Amor's petition for a certificate of innocence based on the trial court finding that " 'defendant did act in such a manner voluntarily to bring about his or her own conviction.' " *Id.* ¶ 14. We held that the element of defendant's innocence is separate from the element of whether defendant voluntarily brought about his conviction and that "what is abundantly clear is that the only basis upon which the trial court dismissed defendant's petition was that defendant brought about his conviction by his conduct." *Id.* ¶¶ 14-15.

¶ 29    Similar to *Amor*, petitioner Washington was denied a certificate of innocence not because petitioner failed to prove his innocence but because his confession and voluntary plea of guilty caused or brought about his conviction. Because Washington failed to meet the fourth prong of section 2-702(g), we find that the trial court did not err in denying his petition for a certificate of innocence. We need not address his remaining claims.

¶ 30    During our consideration of this appeal, petitioner sought leave to file as additional authority, *People v. Reed*, 2020 IL 124940. Defendant asserts *Reed* rejects the invited error doctrine used by the circuit court in "suggesting that a guilty plea foreclosed the innocence petition. That view is inconsistent with the tone of the *Reed* decision." We are not persuaded that *Reed* helps petitioner. In *Reed*, our supreme court held the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) does not foreclose a claim of actual innocence where a valid guilty plea was entered. As earlier stated, petitioner sought relief in the circuit court in the form of a certificate of innocence that, if granted, would allow petitioner to seek a monetary award from the State. Petitioner had to prove four elements, and the circuit court found the fourth element was not proven by a preponderance of the evidence: "the petitioner did not voluntarily cause or bring about his or her conviction." This was not a procedural bar imposed by the circuit court due to petitioner's guilty plea, nor did the circuit court invoke the invited error doctrine. Proving he did not voluntarily cause or bring about his conviction was an element of the cause of action, and the circuit court found petitioner failed to prove this element by a preponderance of the evidence. We cannot say that the circuit court erred in this finding.

¶ 31                                III. CONCLUSION
¶ 32    In light of the foregoing, we affirm the judgment of the trial court denying Washington's petition for a certificate of innocence.

¶ 33    Affirmed.

¶ 34    PRESIDING JUSTICE WALKER, dissenting:
¶ 35    I respectfully dissent.
¶ 36    The majority makes a flagrant misstatement of fact when they say, "[c]ritically, the only testimony the circuit court heard on the issue of police coercion came from the petitioner."

*Supra* ¶ 26. Several other witnesses testified about police coercion in this case. Washington's codefendant, Tyrone Hood, testified that police officers trying to induce a false confession beat him and threatened him repeatedly. Jody Rogers swore in an affidavit that he testified falsely against Washington because police threatened to harm him physically and to charge him with murder if he "didn't tell the police what they wanted [him] to say about the murder." He lied to the grand jury because he "was afraid of what the police would do to [him] if [he] told the truth, which was that [he] didn't know anything about the murder." Michael Rogers swore in a notarized statement that after he honestly told police he knew nothing about the murder of Morgan, police then told him they had evidence implicating him and Jody in the murder. Police paid Michael for making the false statements used against Hood and Washington.

¶ 37    Richard Brzeczek, former Superintendent of Police for the Chicago Police Department, stated in a report in support of Hood's petition:

> "With regard to the statements that were taken from the two brothers, Jody and Michael Rogers, as well as Joe West and Tyrone Hood's co-defendant, Wayne Washington, each of these inculpatory statements was disavowed as untrue prior to trial. The aforementioned people from whom these statements were obtained, all alleged that the statements were the product of police coercion. Those allegations of coercion are directed at Detectives *** Kenneth Boudreau, John Halloran and/or James O'Brien who have been previously identified as engaging in patterns of similar coercive conduct and two of whom have asserted their Fifth Amendment rights against self-incrimination when questioned under oath, in civil proceedings, about coercing witnesses into giving statements."

¶ 38    In a civil suit concerning the liability of the City of Chicago and numerous police officers for their conduct in this case, Halloran invoked his fifth amendment right against self-incrimination in response to the following questions:

> "Did you twist Tyrone Hood's arm during the course of your interrogation of him at Area 1?
>
> *** Did you strike Tyrone Hood during your interrogation of him in May of 1993?
>
> *** Did you point a gun at Tyrone Hood's head during his interrogation at Area 1?
>
> You fabricated Tyrone Hood's statement that, if I don't say anything to explain, I'll go to jail for a long time ***?
>
> *** Did you strike Jody Rogers during the time that you questioned him in May of 1993 at Area 1?
>
> *** Did you threaten to cause physical harm to Jody Rogers if he did not implicate Tyrone Hood in a murder?
>
> *** Did you tell Jody Rogers that if he didn't implicate Tyrone Hood that Mr. Rogers would be charged with murder?
>
> *** Did you tell Jody Rogers that he could not go home unless he said that he saw Tyrone Hood commit a murder?
>
> *** Did you twist Jody Rogers' arm during this interrogation at Area 1?
>
> *** Did you threaten Michael Rogers with physical abuse if he didn't implicate Tyrone Hood in a murder?
>
> *** Did you threaten Michael Rogers that, if he didn't implicate Tyrone Hood in the murder, then his brother Jody Rogers would go to jail?

*** You struck Michael Rogers during your interrogation of him in May of 1993?

*** Did you tell Joe West that he could not leave until he agreed to either implicate himself of Tyrone Hood?

*** Did you threaten Joe West with physical abuse unless he implicated himself or Tyrone Hood in the murder of *** Morgan?

*** Did you strike *** Washington during his interrogation about the Marshall Morgan murder?

*** Did you threaten Wayne Washington with physical abuse if he did not implicate Tyrone Hood in the murder of Marshall Morgan?

*** Did you strike Wayne Washington with the intent of getting him to give a statement implicating Tyrone Hood in the murder of Marshall Morgan?"

¶ 39    In prior cases, this court has considered the invocation of the fifth amendment by police officers closely connected with former Commander Jon Burge. In *People v. Whirl*, 2015 IL App (1st) 111483, ¶ 107, the court found,

"although a court may draw a negative inference from a party's refusal to testify, it is not required to do so. Yet given that the State produced no evidence to rebut the evidence of torture and abuse by [Officer] Pienta, we believe Pienta's invocation of his fifth amendment rights is significant and a negative inference should have been drawn."

¶ 40    Here, too, the circuit court should have drawn a negative inference from Halloran's invocation of the fifth amendment, and that inference strongly corroborates the testimony of Washington and other witnesses to police coercion. The record contains overwhelming evidence that police coercion led to the wrongful conviction of Washington.

¶ 41    The majority holds that the circuit court appropriately found Washington's testimony about police coercion not credible, but the circuit court explicitly based its credibility finding on evidentiary material not presented. The circuit court stated, "Most significant, on August 24, 1995, [Washington] testified under oath in front of Judge Bolan that he was slapped once in the face and the chair that he was sitting in was pushed. He never testified that the police provided the information to put in his statement." The majority now fails to recognize that no party made the August 1995 hearing transcript a part of the circuit court's record, and the transcript is not included in the record on appeal.

¶ 42    Washington argues that the circuit court's investigation into matters not presented by the parties, and its reliance on that material without allowing Washington any opportunity to respond, requires reversal of the judgment and remand for a new hearing on the petition for a certificate of innocence. The majority does not respond to the argument, despite its reliance on the circuit court's credibility determination. Washington deserves an answer as to why the circuit court may find him not credible based on evidence no party presented, where the circuit court does not even permit Washington to respond to the evidence the circuit court found. The holding of *People v. Simon*, 2017 IL App (1st) 152173, ¶ 26, applies directly to this case. As the *Simon* court found,

"petitioner should not be deprived of his right to respond to the evidence used as the basis for finding that he caused his own conviction. The court, on its own, pointed to certain evidence and used it to deny petitioner's request without giving him a meaningful opportunity to object to it. Just as in any other adversarial proceedings,

petitioner must have [the] opportunity to object to the admissibility and the probative value of the evidence used to deny his claim." *Simon*, 2017 IL App (1st) 152173, ¶ 26. The circuit court must afford the petitioner an opportunity to object, especially when the circuit court engages in its own investigation.

¶ 43 We review the circuit court's findings of fact to determine whether they are against the manifest weight of the evidence. *Bauske v. City of Des Plaines*, 13 Ill. 2d 169, 181 (1957); *People v. Pollock*, 2014 IL App (3d) 120773, ¶ 27. The purported statement from August 1995, and the other trivial inconsistencies the circuit court mentions, do not justify the circuit court's complete rejection of all the evidence of coercion. The circuit court's findings here completely ignore the manifest weight of the evidence. Washington proved by a preponderance of the evidence from multiple witnesses, including Halloran, that police used physical coercion and threats to obtain the wrongful conviction of Washington.

¶ 44 The majority asserts: "A defendant who has pled guilty 'cause[d] or [brought] about his or her conviction' (735 ILCS 5/2-702(g)(4) (West 2016)) and is not entitled to a certificate of innocence. [Citation.] We see no other way to interpret this provision." *Supra* ¶ 25. The legislative history of the statute makes no mention of subsection (g)(4). The primary sponsor of the legislation, Representative Flowers, intended the act to provide relief for "people who were unjustly imprisoned" by helping with "job training and education and the amount of monies that they should receive because of their false incarceration." 95th Ill. Gen. Assem., House Proceedings, May 16, 2007, at 13-14 (statements of Representative Flowers).

¶ 45 Section 2-702(g)(4) is similar to the related federal statute and a number of state statutes. See 28 U.S.C. § 2513 (2018); Justin Brooks & Alexander Simpson, *Find the Cost of Freedom: The State of Wrongful Conviction Compensation Statutes Across the Country and the Strange Legal Odyssey of Timothy Atkins*, 49 San Diego L. Rev. 627, 649-50 (2012). A federal judge summarized his extensive research into the federal statute in *United States v. Keegan*, 71 F. Supp. 623, 636 (S.D.N.Y. 1947). For the provision barring relief for persons who brought about their convictions, the judge stated:

> "This carries out simply the equitable maxim that no one shall profit by his own wrong or come into court with unclean hands. It follows the provisions generally found in the European statutes, although these provide, for example in the German act, that gross negligence must exist to bar the right." (Internal quotation marks omitted.) *Keegan*, 71 F. Supp. at 628.

¶ 46 Examples of the misconduct referred to, as stated in some of the statutes, are: "[w]here there has been an attempt to flee, a false confession, the removal of evidence, or an attempt to induce a witness or an expert to give false testimony or opinion, or an analogous attempt to suppress such testimony or opinion." (Internal quotation marks omitted.) *Keegan*, 71 F. Supp. at 638.

¶ 47 Following *Keegan*, the United States Court of Appeals for the Seventh Circuit held,

> "before the petitioner can be said to have caused or brought about his prosecution within the meaning of section 2513(a)(2), he must have acted or failed to act in such a way as to mislead the authorities into thinking he had committed an offense. *** [T]here must be either an affirmative act or an omission by the petitioner that misleads the authorities as to his culpability." *Betts v. United States*, 10 F.3d 1278, 1285 (7th Cir. 1993).

A commentator contended that courts should not construe the act to bar relief to victims who give coerced confessions or enter guilty pleas where the victim does not mislead authorities. Adele Bernhard, *When Justice Fails: Indemnification for Unjust Conviction*, 6 U. Chi. L. Sch. Roundtable 72, 108-09 (1999).

¶ 48    I would follow the guidance of the federal cases interpreting similar statutes. Section 2-702(g)(4) bars recovery "only if the accused can be blamed for his conduct—if he has through his own reprehensible behavior invited the attentions of the police or made necessary his detention." Anders Bratholm, *Compensation of Persons Wrongfully Accused or Convicted in Norway*, 109 U. Pa. L. Rev. 833, 837-38 (1961). A false confession or a guilty plea should foreclose relief only when the person falsely accused culpably misled police or other officials.

¶ 49    Here, when police questioned Washington, he answered them honestly. He knew nothing about the murder of Morgan. Police beat him and threatened him, just as they beat and threatened their other victims, including Jody and Michael Rogers, West, and Hood, to obtain the wrongful convictions of Hood and Washington. Eventually Washington signed a statement an officer wrote (no one contends that police allowed Washington to draft the written statement himself). Washington signed because police threatened him, beat him, and promised he could go home if he signed the statement. When the case came to trial, Washington pled not guilty. A full trial ended with a hung jury. The State subsequently obtained a wrongful conviction against Hood, based largely on the testimony of witnesses the State promised to use against Washington. Unlike Hood, Washington would also need to explain to a jury the false confession he signed. The trial court sentenced Hood to 75 years in prison. As our supreme court noted in *People v. Reed*, 2020 IL 124940, ¶ 33,

> "The plea system encourages defendants to engage in a cost-benefit assessment where, after evaluating the State's evidence of guilt compared to the evidence available for his defense, a defendant may choose to plead guilty in hopes of a more lenient punishment than that imposed upon a defendant who disputes the overwhelming evidence of guilt at trial. [Citations.] As such, it is well accepted that the decision to plead guilty may be based on factors that have nothing to do with defendant's guilt."

The assistant state's attorney had no illusions as to whether Washington claimed innocence when the assistant state's attorney offered to recommend a sentence of 25 years in exchange for a guilty plea. Because the record shows that Washington committed no culpable conduct and never misled police nor the assistant state's attorney, he has shown by a preponderance of the evidence that he did not cause or bring about his arrest or conviction.

¶ 50    Washington deserves the State's assistance in his recovery from the consequences of the offenses police committed against him. The majority's denial of that assistance continues the difficulty associated with the too many wrongful accusations against black and brown people. Wrongful convictions and accusations like these can devastate families, foreclose career opportunities, and undermine the integrity of our justice system.

¶ 51    Because Washington met all the requirements for a certificate of innocence, I would reverse the circuit court's judgment and remand with directions to grant Washington's petition. Accordingly, I respectfully dissent.