2026 IL App (1st) 251647

No. 1-25-1647

Opinion filed May 28, 2026

Fourth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | Cook County |
|     v. | ) | |
| | ) | No. 98 CR 07558 |
| FRANK DREW, | ) | |
|     Defendant-Appellant. | ) | Honorable |
| | ) | Anjana Hansen, |
| | ) | Judge Presiding. |

_____

    PRESIDING JUSTICE NAVARRO delivered the judgment of the court, with opinion.
Justices Ocasio and Quish concurred in the judgment and opinion.
Justice Ocasio also specially concurred, with opinion.


**OPINION**

¶ 1    The parties in this case presented a question to the circuit court, which was then certified

for interlocutory review pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019). The

question presented was:

        "Whether the Circuit Court must grant a certificate of innocence—or has no

        discretion to deny a certificate of innocence—in circumstances where a petitioner

        obtained relief on an actual innocence claim following an evidentiary hearing

pursuant to the Post-Conviction Hearing Act, and the State subsequently dismissed all charges."

¶ 2 For the reasons explained below, we modify the question and answer the certified question, as modified, in the affirmative.

¶ 3                                I. BACKGROUND

¶ 4 Petitioner Frank Drew was convicted in 1998 by a jury of the 1996 murder of Ronald Walker and sentenced to 60 years in prison.

¶ 5 At a pretrial suppression hearing, Drew, who was 18 years old at the time of his arrest, testified that the detectives who questioned him struck him during his first interview while he was handcuffed to a wall. Drew testified that during a second interview he was not allowed to call his mom, was slapped, and was struck in the ribs. He was beaten for over 30 minutes, after which Drew agreed to give a statement. Drew then was allowed to call his mom, who told him not to sign his statement. When Drew told the detectives that he was not going to sign the statement, he was taken to a different room, where a detective put his hands around Drew's throat and told him if he thought what happened last time was bad, he had better sign the statement. Drew then signed the statement.

¶ 6 Drew testified that the next day he was taken to the courthouse for a bond hearing and he told an assistant public defender about the beatings by police officers. When he got to Cook County jail, he told a guard about the beatings and that he was in pain. The next morning, a nurse in the medical unit saw him and gave him pain medication. Drew was subsequently examined by a doctor and told the doctor about the beatings. The doctor's notes indicated marks around Drew's ribs and side. His X-rays were admitted into evidence.

¶ 7 The trial court denied Drew's motion to suppress evidence of his confession.

¶ 8    At trial, Maurice Ruff testified that on the night of the shooting, Drew telephoned him, came over to his house with codefendant Jeff Lurry, and admitted to shooting Walker for gang-related reasons. Lurry admitted to abetting Drew. Drew's written statement admitting to being the shooter was published to the jury. Ultimately, the jury found Drew guilty of murder.

¶ 9    On direct appeal, this court noted that while Drew submitted medical testimony as proof of his injuries, the evidence regarding when the injuries occurred was not established. See *People v. Drew*, 326 Ill. App. 3d 1151 (2001) (table) (unpublished order under Illinois Supreme Court Rule 23). One justice dissented, however, holding that a new trial was warranted because the claims of abuse were substantiated by medical evidence, and the State failed to prove by clear and convincing evidence that the confession was voluntarily made and properly obtained. *Id.*

¶ 10                        A. Postconviction Proceedings

¶ 11    In 2018, Drew filed a supplemental postconviction petition arguing that newly discovered evidence established his actual innocence. He alleged that Ruff had been arrested on weapons and drug charges and proposed a deal with prosecutors. Ruff, as part of his deal, claimed that Drew was the shooter and Lurry was the accomplice in the shooting.

¶ 12    In his petition, Drew alleged as new evidence that Lurry now admitted in an affidavit that he provided false information as part of a "favor" to Ruff so that Ruff could receive a deal. Lurry apologized to the court and Drew that he "falsely manufactured" a statement against Drew.

¶ 13    Drew also included an affidavit from Ruff recanting his trial testimony and admitting he had no idea who was responsible for the shooting. Ruff stated that he lied in order to secure a deal in his own case.

¶ 14    Drew's petition progressed to a third-stage evidentiary hearing. At the conclusion of the hearing, the trial court noted that to establish a claim of actual innocence, the supporting evidence

had to be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the results on retrial. It stated that the testimony at the hearing established that in the hours and days after Walker's murder, several lineups were conducted, and several people were identified, "none of whom were Petitioner Frank Drew." No witness ever mentioned Drew until Ruff came into police custody over a year after the murder.

¶ 15    The court noted that one piece of new evidence presented at the evidentiary hearing was from Ruff who, in an affidavit, claimed that he lied to police when he told them Drew shot the victim. The court stated that no physical or forensic evidence linked Drew to the crime, and no eyewitnesses identified him as being involved in the murder. The only trial evidence linking Drew to the murder was his own inculpatory statement and Ruff's now recanted testimony.

¶ 16    The court concluded, "I do find at this time that Maurice Ruff's affidavit and testimony is new and material evidence." It noted that while Drew gave a statement of guilt, a fact finder could determine that the new evidence, along with the trial evidence, refuted the State's evidence. The court stated, "I do find that the petition for postconviction relief and supporting documentation contain evidence of a conclusive nature that when considered along with the trial evidence would probably lead to a different result." The court granted Drew's postconviction petition and vacated the conviction, granting Drew a new trial.

¶ 17    More than a year later, the State dropped all charges against Drew.

¶ 18                                    B. Certificate of Innocence

¶ 19    Drew filed a petition for a certificate of innocence pursuant to section 5-5-4(c) of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/5-5-4(c) (West 2024)) "and/or" section 2-702 of the Code of Civil Procedure (735 ILCS 5/2-702 (West 2024)). At the parties' joint request, the court bifurcated the proceedings and considered whether Drew was entitled to a

certificate of innocence under the Code of Corrections first. The circuit court, which was the same court that presided over the postconviction proceedings, held that it would not grant a certificate of innocence under that section because it had not affirmatively determined that Drew was innocent. Before moving on to consider whether Drew was entitled to a certificate of innocence under section 2-702 of the Code of Civil Procedure, Drew requested a stay of proceedings so that the court could certify a question of law for an interlocutory appeal. The court granted the stay and certified the following question for review pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019):

> "Whether the Circuit Court must grant a certificate of innocence—or has no discretion to deny a certificate of innocence—in circumstances where a petitioner obtained relief on an actual innocence claim following an evidentiary hearing pursuant to the Post-Conviction Hearing Act, and the State subsequently dismissed all charges."

¶ 20    This court granted Drew's Rule 308 application for leave to appeal.

¶ 21                                    II. ANALYSIS

¶ 22                                    A. Jurisdiction

¶ 23    As an initial matter, the State contends that this court lacks jurisdiction because Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019), the vehicle by which we granted leave to appeal in this case, applies only in civil cases. However, proceedings to obtain a certificate of innocence are civil in nature. *People v. Terrell*, 2022 IL App (1st) 192184, ¶ 40 ("[P]roceedings under the certificate of innocence statute are civil in nature and serve as an avenue to obtaining relief in the court of claims."). Here, Drew filed his petition for a certificate of innocence pursuant to both section 2-702 of the Code of Civil Procedure and section 5-5-4(c) of the Code of Corrections.

While section 5-5-4(c) was enacted within the Code of Corrections, that does not dictate whether civil or criminal rules of procedure apply. Indeed, postconviction proceedings are found in the Code of Criminal Procedure, yet courts have consistently noted that the rules of civil procedure apply to those proceedings. See *People v. Johnson*, 191 Ill. 2d 257, 270 (2000) ("A post-conviction proceeding is not part of the criminal process. Rather, it is a collateral attack on the judgment of conviction and is civil in nature."). Accordingly, we find that Rule 308 was the proper vehicle by which to certify the certificate of innocence question.

¶ 24                                    B. Certified Question

¶ 25    "Supreme Court Rule 308 provides a remedy of permissive appeal for interlocutory orders where the trial court has deemed that they involve a question of law as to which there is substantial ground for difference of opinion and where an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Apollo Real Estate Investment Fund, IV, L.P. v. Gelber*, 398 Ill. App. 3d 773, 778 (2009). "Our review is strictly limited to the certified question[ ] presented; we do not render any opinion on the propriety of any underlying rulings of the trial court." *Id.*

¶ 26    At the outset, we note that the certified question, as presented, slightly misstates the relevant law. "By definition, certified questions are questions of law subject to *de novo* review" (*Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21), and "the scope of our review is limited to the certified question" (*Moore v. Chicago Park District*, 2012 IL 112788, ¶ 9). We are not, however, limited to the language of the question as certified. *James v. Geneva Nursing & Rehabilitation Center, LLC*, 2023 IL App (2d) 220180, ¶ 13. As a reviewing court, we may disregard words or phrases in the question that mischaracterize the issue and instead consider "the question remaining." See *Moore*, 2012 IL 112788, ¶¶ 11-14. Here, the language of the certified

question does not quite mirror that of the statute and would be potentially misleading as framed. Nevertheless, we can answer the certified question, as reframed, and we answer that modified question in the affirmative.

¶ 27 The certified question presented by the parties asked whether the circuit court must grant a certificate of innocence—or has no discretion to deny a certificate of innocence—in circumstances where a petitioner "obtained relief on an actual innocence claim following an evidentiary hearing pursuant to the Post-Conviction Hearing Act, and the State subsequently dismissed all charges." However, the statute at issue states, as discussed in detail below, that a circuit court shall enter an order for a certificate of innocence in certain circumstances, one of which is where a petitioner's conviction was vacated as a result of an actual innocence claim based on newly discovered evidence pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2024)), a new trial was ordered, the petitioner was not retried, and the State dismissed the charges. 730 ILCS 5/5-5-4(c) (West 2024). Accordingly, we modify the certified question as follows:

"Whether the Circuit Court must enter an order for a certificate of innocence—or has no discretion to deny a certificate of innocence—in circumstances where a petitioner's conviction has been vacated following an evidentiary hearing pursuant to the Post-Conviction Hearing Act on a claim of actual innocence based on newly discovered evidence, a new trial was ordered, the petitioner was not retried, and the State dismissed all charges."

¶ 28 We now turn to the modified certified question, which involves statutory construction. When presented with an issue of statutory construction, a court's primary objective is to ascertain and give effect to the intent of the legislature. *Oswald v. Hamer*, 2018 IL 122203, ¶ 10. The most

reliable indicator of legislative intent is the language of the statute, which must be given its plain and ordinary meaning. *Id.* The statute is viewed as a whole, construing words and phrases in context to other relevant statutory provisions and not in isolation. *Id.* Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. *Id.*

¶ 29 Section 2-702 of the Code of Civil Procedure governs how a petitioner can obtain a certificate of innocence. 735 ILCS 5/2-702 (West 2024). The General Assembly acknowledged "that innocent persons who have been wrongly convicted of crimes in Illinois and subsequently imprisoned have been frustrated in seeking legal redress due to a variety of substantive and technical obstacles in the law." *Id.* § 2-702(a). The General Assembly noted "that such persons should have an available avenue to obtain a finding of innocence so that they may obtain relief through a petition in the Court of Claims." *Id.*

¶ 30 Section 2-702(g) states that in order to obtain a certificate of innocence, a petitioner must prove by a preponderance of the evidence that:

"(1) the petitioner was convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;

(2)(A) the judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either the petitioner was found not guilty at the new trial or the petitioner was not retried and the indictment or information dismissed; or (B) the statute, or application thereof, on which the indictment or information was based violated the Constitution of the United States or the State of Illinois;

(3) the petitioner is innocent of the offenses charged in the indictment or information or his or her acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State; and

(4) the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction." *Id.* § 2-702(g).

¶ 31 In 2014, section 5-5-4(c) of the Code of Corrections was enacted. It states that if a conviction has been "vacated as a result of a claim of actual innocence based on newly discovered evidence made under Section 122-1 of the Code of Criminal Procedure of 1963," *i.e.*, the Post-Conviction Hearing Act, and the

"provisions of paragraphs (1) and (2) of subsection (g) of Section 2-702 of the Code of Civil Procedure are otherwise satisfied, the court shall enter an order for a certificate of innocence and an order expunging the conviction for which the petitioner has been determined to be innocent as provided in subsection (h) of Section 2-702 of the Code of Civil Procedure." 730 ILCS 5/5-5-4(c) (West 2024).

¶ 32 In the case at bar, Drew filed a postconviction petition pursuant to section 122-1 of the Post-Conviction Hearing Act (725 ILCS 5/122-1 (West 2024)), claiming actual innocence based on newly discovered evidence. Following a third-stage evidentiary hearing, the circuit court vacated Drew's conviction based on his claim of actual innocence, finding specifically that Ruff's affidavit constituted new and material evidence, and that it was of such a "conclusive nature that when considered along with the trial evidence would probably lead to a different result." Accordingly, the first part of section 5-5-4(c) of the Code of Corrections has been satisfied where Drew's conviction was "vacated as a result of a claim of actual innocence based on newly discovered evidence." 730 ILCS 5/5-5-4(c) (West 2024).

¶ 33     The second portion of section 5-5-4(c) states that the "provisions of paragraphs (1) and (2) of subsection (g) of Section 2-702 of the Code of Civil Procedure" must be "otherwise satisfied." *Id.* As noted above, those sections require that (1) the petitioner was convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment and has served all or any part of the sentence, and (2) the judgment of conviction was reversed or vacated, and the indictment or information dismissed, or if a new trial was ordered, either the petitioner was found not guilty or the petitioner was not retried and the indictment or information dismissed. 735 ILCS 5/2-702(g)(1), (2) (West 2024). Here, Drew was convicted of murder and sentenced to a term of 60 years in prison. He served almost half of that sentence. After the circuit court vacated Drew's conviction, it ordered a new trial. A year later, the State dismissed the charges against Drew. Accordingly, the second portion of section 5-5-4(c) of the Code of Corrections was also satisfied. See 730 ILCS 5/5-5-4(c) (West 2024).

¶ 34     The next portion of section 5-5-4(c) states that if the above prerequisites have been met, "the court shall enter an order for a certificate of innocence." *Id*. By using the word "shall," the legislature gave "a clear expression of legislative intent to impose a mandatory obligation." *People v. O'Brien*, 197 Ill. 2d 88, 93 (2001). Accordingly, the circuit court had an obligation to enter an order for a certificate of innocence when the State dismissed the charges against Drew, as each of the statutory requirements of section 5-5-4(c) had been met.

¶ 35     We are unpersuaded by the State's argument that the final part of the last sentence of section 5-5-4(c) of the Code of Corrections indicates that the circuit court was to make a specific finding of actual innocence. The last sentence states that if the requirements in the statute are met, "the court shall enter an order for a certificate of innocence and an order expunging the conviction for which the petitioner has been determined to be innocent as provided in subsection (h) of Section

2-702 of the Code of Civil Procedure." 730 ILCS 5/5-5-4(c) (West 2024). Subsection (h) of section 2-702 outlines the procedure which the circuit court is to follow after finding that a petitioner is entitled to judgment on a claim for a certificate of innocence. Specifically, it states:

> "If the court finds that the petitioner is entitled to a judgment, it shall enter a certificate of innocence finding that the petitioner was innocent of all offenses for which he or she was incarcerated. Upon entry of the certificate of innocence ***, (1) the clerk of the court shall transmit a copy of the certificate of innocence to the clerk of the Court of Claims, together with the claimant's current address; and (2) the court shall enter an order expunging the record of arrest from the official records of the arresting authority and order that the records of the clerk of the circuit court and the Illinois State Police be sealed until further order of the court upon good cause shown or as otherwise provided herein, and the name of the defendant obliterated from the official index requested to be kept by the circuit court clerk ***." 735 ILCS 5/2-702(h) (West 2024).

¶ 36    As can be seen, section 5-5-4(c)'s reference to this section does not impose an additional requirement on the circuit court to make a determination of innocence. Rather, it states that once a court determines that a petitioner is entitled to judgment on a claim for a certificate of innocence, there are certain procedures the court must follow, as outlined in subsection (h) of section 2-702 of the Code of Civil Procedure. In this case, Drew was entitled to judgment on his claim for a certificate of innocence because the statutory requirements of section 5-5-4(c) had been met, which would then have triggered the court to follow the procedures outlined in subsection (h) of section 2-702 of the Code of Civil Procedure.

¶ 37    Moreover, if the legislature intended for the circuit court to make a specific finding of actual innocence, it would have incorporated in section 5-5-4(c) of the Code of Corrections a reference to paragraph (3), and not just paragraphs (1) and (2), of subsection (g) of Section 2-702 of the Code of Civil Procedure. As outlined above, paragraph (3) of section 2-702(g) states that a petitioner must prove by a preponderance of the evidence that the petitioner is innocent of the offenses charged in the indictment or information. *Id.* § 2-702(g)(3). A specific finding of actual innocence is simply not a prerequisite for obtaining a certificate of innocence under section 5-5-4(c) of the Code of Corrections, and we will not read that requirement into the statute where none exists. See, *e.g.*, *O'Connell v. County of Cook*, 2021 IL App (1st) 201031, ¶ 26 (where requirements are excluded from a list, courts should presume omitted requirements were intentional).

¶ 38    We find support in our reading of the statute when looking at the legislative history. The reasoning for enacting section 5-5-4(c) was explained by Senator Kwame Raoul, on May 23, 2013, when House Bill 821 (see 98th Ill. Gen. Assem., House Bill 821, 2013 Sess.) was heard. Senator Raoul stated that House Bill 821 amends the Code of Corrections

> "to provide that a court shall enter an order for a certificate of innocence if a conviction has been vacated as a result of a claim of actual innocence based on newly discovered evidence, thereby allowing the court to automatically enter an order, rather than requiring *** the defendant to initiate a separate civil proceeding for a certificate of innocence." 98th Ill. Gen. Assem., Senate Proceedings, May 23, 2013, at 44-45 (statements of Senator Raoul).

Similarly, in the House, Representative Monique Davis explained that section 5-5-4(c) was intended to help a petitioner "receive a certificate of innocence without going through an additional

civil process." 98th Ill. Gen. Assem., House Proceedings, April 19, 2013, at 128 (statements of Representative Davis). Thus, the legislative history supports our reading of the statute, which allows a petitioner to receive a certificate of innocence without having to relitigate the issue of innocence when certain circumstances exist, such as the one presented here, where a conviction was vacated after a successful postconviction claim of actual innocence based on newly discovered evidence, a new trial was ordered, the petitioner was not retried, and all charges were dropped by the State.

¶ 39    Moreover, the enactment of section 5-5-4(c) would have been unnecessary if we were to require a finding of actual innocence by the circuit court under that section. It would then contain nearly the same provisions already set forth in section 2-702 of the Code of Civil Procedure, thereby obviating the need for a petitioner to petition the court for a certificate of innocence under section 5-5-4(c) of the Code of Corrections. Rather, we find that the circumstances of this case are precisely the circumstances the legislature contemplated in enacting section 5-5-4(c) of the Code of Corrections. Drew's postconviction petition claiming actual innocence based on newly discovered evidence was granted after a third-stage evidentiary hearing, the court vacated his conviction, and a new trial was ordered. However, instead of retrying Drew for murder, the State chose to drop the charges against him. Once the State dropped the charges against Drew, the prerequisites under section 5-5-4(c) had been met. When all the prerequisites are met under section 5-5-4(c), a circuit court must enter an order for a certificate of innocence.

¶ 40                                    III. CONCLUSION

¶ 41    For the foregoing reasons, we answer the certified question, as modified, in the affirmative.

¶ 42    Modified certified question answered; cause remanded.

¶ 43    JUSTICE OCASIO, specially concurring:

¶ 44 The "collateral" consequences that flow from a criminal record can be so severe as to be analogous to civil death. See *Utah v. Strieff*, 579 U.S. 232, 253 (2016) (Sotomayor, J., dissenting) (citing Gabriel J. Chin, *The New Civil Death: Rethinking Punishment in the Era of Mass Conviction*, 160 U. Pa. L. Rev. 1789, 1805 (2012)). These consequences can affect every aspect of a person's daily life, including employment, housing, education, and even parental rights. See Erin M. Wright, Comment, *Innocence Is Not Enough: Illinois Certificates of Innocence & the Case of Wayne Washington*, 113 J. Crim. L. & Criminology 431, 456-61 (2023). Certificates of innocence give the wrongfully convicted a path to both obtain financial compensation from the state and to have the records related to their conviction expunged. See 735 ILCS 5/2-702(h) (West 2024). The express purpose of the statute is to eliminate "obstacles to obtain a certificate of innocence and the services and opportunities the certificate provides." *People v. Washington*, 2023 IL 127952, ¶ 45. Section 5-5-4(c) of the Unified Code of Corrections (730 ILCS 5/5-5-4(c) (West 2024)) is animated by that same spirit. Usually, to obtain a certificate of innocence, petitioners must prove that they are in fact innocent of the charges that led to their conviction. See 735 ILCS 5/2-702(g)(3) (West 2024). As the court's opinion explains, section 5-5-4(c) exempts from that requirement petitioners who have already made a sufficiently persuasive showing of their factual innocence in a successful postconviction claim of actual innocence.

¶ 45 Too often, this court has thwarted the legislature's intent by construing the requirements for obtaining a certificate of innocence in a way that interposes precisely the kind of "substantive and technical obstacles in the law" that the scheme is supposed to avoid. *Id.* § 2-702(a); see, *e.g.*, *People v. Washington*, 2021 IL App (1st) 163024, ¶ 25 (reading into section 2-702 a prohibition on obtaining a certificate of innocence if the petitioner pleaded guilty), *rev'd*, 2023 IL 127952; Wright, *supra*, at 450-54 (construing *People v. Amor*, 2020 IL App (2d) 190475, as barring

innocent petitioners who give confessions from receiving certificates of innocence unless they show official misconduct). The court's decision today avoids that error: our interpretation of section 5-5-4(c) is required by the text, but it is also the only interpretation that is faithful to the legislature's objective of making it easier, not harder, to obtain relief from the ongoing effects of a wrongful conviction.

¶ 46    With those additional comments, I fully concur in the court's opinion.

*People v. Drew*, 2026 IL App (1st) 251647

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 98-CR-07558; the Hon. Anjana Hansen, Judge, presiding. |
| **Attorneys for Appellant:** | Josh Tepfer, Karl Leonard, Fadya Salem, and Debra Loevy, of The Exoneration Project, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (John E. Nowak, Daniel Piwowarczyk, and Paul E. Wojcicki, Assistant State's Attorneys, of counsel), for the People. |