2022 IL App (2d) 210590-U
No. 2-21-0590
Order filed October 31, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-599 |
| ARAMIS HATCH, | ) ) ) | Honorable John Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Hudson concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court did not abuse its discretion in denying defendant's petition for a certificate of innocence where he failed to prove by a preponderance of the evidence that he was innocent of the charged offenses.

¶ 2   Defendant, Aramis Hatch, appeals the order of the circuit court of Kane County denying his petition for a certificate of innocence under section 2-702 of the Code of Civil Procedure (Code) (735 ILCS 5/2-702 (West 2020)).  We affirm.

¶ 3                                   I. BACKGROUND

¶ 4   The factual background is more fully set forth in this court's prior opinion in *People v.*

*Hatch*, 2020 IL App (2d) 170932-U (unpublished order under Illinois Supreme Court Rule 23) (*Hatch I*), which was defendant's direct appeal from his conviction. We include only those facts that are pertinent to the resolution of the instant appeal.

¶ 5    On August 18, 2015, defendant was charged by indictment with two counts of aggravated unlawful use of a weapon (AUUW) for possessing a concealed firearm while not on his land or in his home (or that of another person as an invitee) without a valid concealed carry license (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5) (West 2014)) or a valid Firearm Owner's Identification (FOID) card (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2014)). The charges stemmed from an incident that occurred on April 11, 2015. On that date, police were dispatched to an address in Elgin in response to a 911 call regarding a "potential stolen vehicle." Once there, they discovered a vehicle with two passengers inside parked on the road, in front of a stop sign. Defendant, who was seated in the front passenger seat, was observed with a pistol protruding from the pocket of his jacket. Because defendant was seated, the pockets of his jacket were near his lap, and so "the pistol was sitting right on his lap." Police secured defendant's firearm, removed seven rounds of ammunition from it, and arrested him. Defendant did not resist the officers and he fully complied with their commands. At the time of the arrest, the officers did not know whether defendant had a valid FOID card or if he possessed the firearm legally. Neither a FOID card nor a license under the Firearm Concealed Carry Act (430 ILCS 66/1 *et seq.* (West 2014)) was recovered from defendant.

¶ 6    Based on *People v. Wiggins*, 2016 IL App (1st) 153163, the circuit court granted the State's motion *in limine* and prohibited defendant from offering any evidence or argument that he was a resident of the state of Georgia or that he was permitted to possess a firearm in that state without a license. The State expressly anticipated that defendant would argue that he was permitted to carry a firearm in Georgia without a license such that he fit the exemption in the Firearm Owner's

Identification Card Act (FOID Card Act) applicable to "[n]onresidents who are currently licensed or registered to possess a firearm in their resident state." 430 ILCS 65/2(b)(10) (West 2014). After a bench trial, defendant was found guilty of both offenses and sentenced to 180 days in jail and 24 months' probation.

¶ 7 Defendant filed a direct appeal raising three arguments: (1) his trial counsel was ineffective for failing to file a motion to quash his arrest and suppress evidence because the officers lacked probable cause to believe his possession of the firearm was illegal at the time of arrest; (2) he was either exempt from the FOID Card Act and the Firearm Concealed Carry Act, or the statutes were unconstitutional as applied to him; and, (3) in the alternative, one of his convictions should be vacated under the one-act, one-crime doctrine. We agreed with defendant's first argument and reversed his convictions outright on June 12, 2020. *Hatch I*, 2020 IL App (2d) 170932-U, ¶ 2. In so holding, we reasoned that a motion to quash arrest and suppress evidence would have succeeded had defendant's counsel filed one because the arresting officers testified that they had no knowledge regarding whether defendant legally possessed the firearm at the time of the arrest, and the applicable case law was clear that possession of a firearm outside of the home is not, in and of itself, a crime. *Id*. ¶¶ 27-40. See also *People v. Aguilar*, 2013 IL 112116, ¶¶ 20-22 (striking down as unconstitutional a section of the AUUW statute that categorically banned the possession of an operable firearm outside the home). As the result of this determination, it was unnecessary to reach the merits of defendant's remaining arguments.

¶ 8 On May 14, 2021, defendant filed a petition for a certificate of innocence under section 2-702 of the Code. He highlighted that he was convicted of two counts of AUUW, that he fully served his sentence, that we reversed his conviction outright, and that the circuit court subsequently entered an order dismissing his charges. As the factual basis for the petition, defendant contended

that he was a resident of the state of Georgia at the time of his arrest, where "he [was] allowed to possess a firearm without a license under Georgia law such that Georgia permitted and licensed him to possess a firearm." According to defendant, he therefore fell into the exception in the FOID Card Act applicable to "[n]onresidents who are currently licensed or registered to possess a firearm in their resident state." See 430 ILCS 65/2(b)(10) (West 2020). Concerning the Firearm Concealed Carry Act, defendant maintained that he fell into an exception that is applicable to a nonresident who is "transporting a concealed firearm within his or her vehicle" and, among other requirements, "is eligible to carry a firearm in public under the laws of his or her state or territory of residence, as evidenced by the possession of a concealed carry license or permit issued by his or her state of residence, if applicable." See 430 ILCS 66/40(e) (West 2020). Accordingly, defendant contended he was not required to obtain either a FOID card or a concealed carry license before possessing a firearm in Illinois and was innocent of the charged offenses. Defendant did not cite any Georgia authority in support of his assertion that he was allowed to possess a firearm without a license under Georgia law.

¶ 9    On May 20, 2021, the State moved to deny defendant's petition, arguing that he failed to establish his innocence of the offenses charged in the indictment. It stressed that the reversal of his convictions was based, not on the proposition that defendant lawfully possessed the firearm on the date of the offense, but rather, on defendant's receipt of ineffective assistance of counsel. In other words, it asserted that the reversal of defendant's convictions did not mean that he lawfully possessed the firearm at the time of his arrest. The State also argued that defendant provided insufficient detail to establish his innocence of the offenses, including any evidence that he was a resident of Georgia or that he was allowed to possess a firearm under Georgia law. *Arguendo*, even if defendant was a resident of Georgia and was allowed to possess a firearm there, the State

emphasized that the appellate court rejected the identical argument in *Wiggins*, where it held that the exception to the FOID Card Act for nonresidents currently licensed or registered to possess a firearm in their resident state applied only "to nonresidents who have complied with a required governmental process and received an official license from their home state to possess a firearm." *Wiggins*, 2016 IL App (1st) 153163, ¶ 61.

¶ 10    On May 24, 2021, defendant filed a response to the State's motion and asserted that, under the "innocence" prong in section 2-702(g)(3), he needed only to establish that he was found "not guilty," and that the State's argument impermissibly argued in favor of "a higher standard of 'innocence of the charges.' " He contended that, "[a]t the very least, defendant [was] *** 'not guilty' which meets the criteria for a Certificate of Innocence." Regarding the State's reliance on *Wiggins*, defendant contended that it was a "red herring" whose decision was flawed. The State filed a reply on June 16, 2021, disputing defendant's claim that he needed only to demonstrate that he was "not guilty" and maintained that defendant failed to establish that he possessed the firearm legally.

¶ 11    After a hearing on September 17, 2021, the circuit court entered a written order denying the petition, reasoning that defendant failed to satisfy the third prong of section 2-702(g), namely, that he was innocent of the charged offenses. It observed that, although section 2(b)(10) of the FOID Card Act exempts "nonresidents who are currently licensed or registered to possess a firearm in their resident state," *Wiggins* held that the exception is applicable only to nonresidents who have "complied with a required governmental process and received an official license from their home state to possess a firearm," as opposed to situations in which the resident state authorizes gun possession without any formal approval or licensure requirements. See *Wiggins*, 2016 IL App (1st) 153163, ¶ 43. The court further noted that, notwithstanding the officers' failure to investigate

whether defendant possessed the firearm legally, he was not innocent of the charges because he, "in fact, \*\*\* did not hold such licenses or registrations sufficient to exempt him from the \*\*\* [AUUW] charge[s]."

¶ 12   Defendant timely appeals.

¶ 13                                II. ANALYSIS

¶ 14   Defendant argues on appeal that the circuit court erred in denying his petition for a certificate of innocence because he satisfied the four statutory prongs in section 2-702(g) necessary to obtain such a certificate—including the third prong, which requires that a petitioner prove that he is innocent of the offenses charged in the indictment.  Defendant maintains that he is entitled to a certificate of innocence based on "evidence submitted and the Appellate Court's ruling on reversing outright [his] conviction."

¶ 15   Section 2-702 of the Code provides a means for innocent persons who have been wrongfully convicted and imprisoned to obtain a finding of innocence so that they may seek relief through a petition in the Court of Claims.  735 ILCS 5/2-702(a) (West 2020).  Its aim is to "benefit men and women that have been falsely incarcerated through no fault of their own."  (Internal quotation marks omitted.)  *People v. Warner*, 2022 IL App (1st) 210260, ¶ 32.  The proceedings are civil in nature, and the burden is on the petitioner to prove the requirements to entitle him or her to such relief by a preponderance of the evidence.  *People v. Rodriguez*, 2021 IL App (1st) 200173, ¶ 44.

¶ 16   Section 2-702(b) of the Code establishes who may petition for a certificate of innocence and what he or she may request.  It provides:

"[a]ny person convicted and subsequently imprisoned for one or more felonies by the State of Illinois which he or she did not commit may, under the conditions hereinafter provided,

file a petition for certificate of innocence in the circuit court of the county in which the

person was convicted.  The petition shall request a certificate of innocence finding that the

petitioner was innocent of all offenses for which he or she was incarcerated."  735 ILCS

5/2-702(b) (West 2020).

¶ 17    To obtain a certificate of innocence under section 2-702 of the Code, the petitioner must

prove four elements by a preponderance of the evidence:

"(1) the petitioner was convicted of one or more felonies by the State of Illinois and

subsequently sentenced to a term of imprisonment, and has served all or any part of the

sentence;

(2)(A) the judgment of conviction was reversed or vacated, and the indictment or

information dismissed or, if a new trial was ordered, either the petitioner was found not

guilty at the new trial or the petitioner was not retried and the indictment or information

dismissed; or (B) the statute, or application thereof, on which the indictment or information

was based violated the Constitution of the United States or the State of Illinois;

(3) the petitioner is innocent of the offenses charged in the indictment or information or his

or her acts or omissions charged in the indictment or information did not constitute a felony

or misdemeanor against the State; and

(4) the petitioner did not by his or her own conduct voluntarily cause or bring about his or

her conviction."  735 ILCS 5/2-702(g) (West 2020).

¶ 18    When evaluating whether a petitioner has shown by a preponderance of the evidence that

he or she was innocent of the offense, the circuit court must consider the materials attached to the

petition in relation to the trial evidence.  *People v. Fields*, 2011 IL App (1st) 100169, ¶ 19.  "If the

court finds that the petitioner is entitled to a judgment, it shall enter a certificate of innocence

finding that the petitioner was innocent of all offenses for which he or she was incarcerated." 735 ILCS 5/2-702(h) (2020). Where a petitioner obtains a certificate of innocence, it is "all but certain that the petitioner can obtain a money judgment against the State for wrongful incarceration." *People v. Moore*, 2020 IL App (1st) 190435, ¶37. See also *Betts v. United States*, 10 F.3d 1278, 1283 (7th Cir. 1993) ("[a] certificate of innocence serves no purpose other than to permit its bearer to sue the government for damages"). The decision of whether to grant a petitioner a certificate of innocence is within the sound discretion of the circuit court. *Rodriguez*, 2021 IL App (1st) 200173, ¶ 44. A trial court abuses its discretion only when its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view of the trial court. *Id.* ¶ 47.

¶ 19    At the outset, we are compelled to address defendant's failure to comply with Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020), which governs the form and contents of an appellant's brief. Defendant's brief represents his second attempt to file a brief in conformity with the rules. Following a motion filed by the State, we struck defendant's initial brief and ordered him to file a brief that substantially complied with all applicable rules or risk dismissal. The requirements outlined in Rule 341(h) "are not mere suggestions," and the "failure to comply with the rules regarding appellate briefs is not an inconsequential matter." *Hall v. Naper Gold Hospitality, LLC*, 2012 IL App (2d) 111151, ¶ 7. The procedural rules governing the content and format of appellate briefs are mandatory. *Ammar v. Schiller, DuCanto & Fleck, LLP*, 2017 IL App (1st) 162931, ¶ 11. "The purpose of the rules is to require the parties to present clear and orderly arguments, supported by citations of authority and the record, so that this court can properly ascertain and dispose of the issues involved." *Gruby v. Department of Public Health*, 2015 IL App (2d) 140790, ¶ 20.

¶ 20     Defendant's subsequent brief fails to conform with Rule 341(h)(6), which requires that an appellant's brief include a statement of facts "which shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Defendant's statement of facts contains two critical assertions of "fact" that are both unsupported by the record and contested by the State. Specifically, defendant states: "[t]he Petitioner, *who was a Georgia resident at the time of the arrest*, was convicted of two counts of aggravated unlawful use of a weapon." (Emphasis added.) Defendant's only citation to the record for this proposition is the circuit court's order finding him guilty. Although that order does establish that he was convicted of two counts of AUUW, it makes no reference to his state of residency. Second, defendant asserts in his statement of facts that he "was familiar with Georgia law under which he was eligible to carry a firearm in public without a physical license." Defendant supports this assertion by reference to the "Background" section of this court's Rule 23 order pertaining to his direct appeal, wherein we recounted defendant's own proffered testimony and arguments that he would have presented at trial had the circuit court denied the state's motion *in limine*. See *Hatch I*, 2020 IL App (2d) 170932-U, ¶ 13. This assertion is argumentative and thus improper for a statement of facts because it presents defendant's proffered argument and his advocated-for legal conclusion as a historical fact of this appeal. Our Rule 23 order, which defendant apparently points to as the "appropriate reference to the pages of the record on appeal," provides no support for his declaration that he was eligible to carry a firearm in public under Georgia law.

¶ 21     Defendant's second brief also largely fails to conform to Rule 341(h)(7), which requires that an appellant's brief contain "[a]rgument, which shall contain the contentions of the appellant

and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). The nature of the exact arguments that defendant raises in his appellate brief are, at best, difficult to discern. He purports to identify five contentions, but none of them articulate a lucid argument upon which to reverse the circuit court's judgment. First, none of the headings that purport to state defendant's argumentative points and subpoints identify defendant's actual argument. Rather, the headings merely identify the general topic that follows. See Ill. S. Ct. R. 341 (h)(1) (eff. Oct. 1, 2020) (the "Points and Authorities" section of an appellate brief "shall consist of the headings of the points and subpoints as in the Argument"). The first heading in defendant's brief is titled "Four Prongs for a Certificate of Innocence." Another is simply titled "735 ILCS 5/2-702(g)," which is the portion of the Code that governs certificates of innocence. As far as we can tell, neither of these enumerated portions of defendant's argument make any argument at all. The former appears to do little more than identify an issue on appeal, and the latter declares only that defendant's "actual innocence claim holds," citing, without analysis, *People v. Washington*, 171 Ill. 2d 475, 489 (1996), in which our supreme court held that a claim of actual innocence is cognizable under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 1992)).

¶ 22    The substance of the remaining portions of defendant's argument section fare no better. It is replete with unstructured, confusing, and ill-defined "arguments" that lack cohesion and provide little to no discussion of the applicable case law to the facts of this case. Defendant has largely failed to articulate a legal argument that would allow for meaningful review. A reviewing court is entitled to have the issues raised in an appellant's brief clearly defined and supported by pertinent authority and cohesive arguments. *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009). The appellate court is not a depository into which the appellant may dump the burden of argument and

research. *In re Marriage of James and Wynkoop*, 2018 IL App (2d) 170627, ¶ 37. Moreover, several portions of defendant's argument section appear to have been "borrowed" from published case law involving other defendants who sought certificates of innocence. For example, defendant's second identified argument (which he identifies in a heading only as "The Circuit Court Decision") bears a striking resemblance to *People v. Hood*, 2021 IL App (1st) 162964, ¶¶ 24-26. Another portion of his argument repurposes, nearly verbatim, portions of *People v. McClinton*, 2018 IL App (3d) 160648, ¶¶ 20-21. Although defendant's counsel did provide attribution to those cases in his appellate brief, he did so without utilizing block quotation or any other means to clearly delineate the copied material. We remind counsel of his duty to comply with Rule 8.4(c) of the Illinois Rules of Professional Conduct of 2010, which prohibits attorneys from "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation." 134 Ill. 2d R. 8.4(c).

¶ 23 The State requests that we dismiss the appeal based upon the unsupported and argumentative assertions in defendant's statement of facts, as we have outlined above. It does not argue for dismissal based upon the nonconformity of defendant's argument section with Rule 341(h)(7). Striking a party's appellate brief, whether in whole or in part, is a harsh sanction that we will employ only when the violations are so great that they hinder our review. *Burrell v. Village of Sauk Village*, 2017 IL App (1st) 163392, ¶ 14. In light of defendant's failure to comply with Rule 341(h), it would be well within our discretion to strike the brief and dismiss the appeal, especially because defendant was provided a second opportunity to comply with all applicable rules. We decline to do so, however, because we have the benefit of a cogent brief from the State, and it is possible to discern at least some of defendant's arguments. See *Twardoski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001). Accordingly, we will endeavor to

address defendant's arguments to the extent we can discern them, but we will find forfeited those arguments that are not properly developed or unsupported with adequate authority.

¶ 24    As best we can tell, defendant argues on appeal that: (1) the circuit court applied the wrong standard in evaluating whether defendant was innocent of the offenses charged in the indictment; (2) the offenses he was convicted of were held to be unconstitutional and, as a result, his actions on the date of the offense were not criminal; and (3) he is innocent of his AUUW charges because, as a resident of Georgia, he fell within exceptions to the FOID Card Act and the Firearm Concealed Carry Act, because Georgia has no firearm licensing provision, such that his possession of a firearm in Illinois on the date of the offense was lawful.  All three arguments fail.

¶ 25    Concerning his first claim of error, defendant seizes upon the circuit court's finding that "he was not 'innocent' of the charges for which he was convicted," and argues that the court held him to a standard of innocence that is "dramatically higher" than is required under section 2-702(g) of the Code.  He likens the court's use of the word "innocent" as to being akin to "actual innocence," as that term is used in the context of postconviction proceedings, which requires that a defendant present "new, material, noncumulative evidence that is so conclusive it would probably change the result on retrial."  See *People v. Coleman*, 2013 IL 113307, ¶ 96.  Defendant stresses that, conversely, the threshold to establish innocence under section 2-702(g)(3) is a lower burden because a petitioner seeking a certificate of innocence need only establish their innocence by a preponderance of the evidence.

¶ 26    We reject defendant's argument.  Foremost, as noted, this argument heavily borrows from the First District's recent opinion in *Hood*, 2021 IL App (1st) 162964, ¶¶ 25-26.  There, the appellate court rejected the identical argument, stating that it found "the debate over whether the section 2-702 petitioner must prove 'actual innocence' or 'simple innocence' to be a semantic

distraction." *Id.* ¶ 27. There, just as here, the record demonstrates that the court utilized the correct standard in evaluating whether defendant satisfied the statutory prerequisites necessary to obtain a certificate of innocence, including the requirement in section 2-702(g)(3) that a petitioner demonstrate he or she "is innocent of the offenses charged in the indictment." Section 2-702 requires that, in order to obtain a certificate of innocence, the defendant must prove by a preponderance of the evidence that he or she is "actually innocent," rather than a situation in which the State presented insufficient evidence to convict the defendant, as well as that the defendant did not act in a way that brought about the conviction. *People v. Dumas*, 2013 IL App (2d) 120561, ¶¶ 18-19. The court's written decision correctly recited the applicable burden that was on defendant, namely that he prove, by a preponderance of the evidence, that he is innocent of the offenses. The court also found that, "[w]hile the evidence of the incident would have been suppressed and the defendant would be 'not guilty,' he was not 'innocent' of the charges for which he was convicted. The court's use of the phrase "not innocent" does not suggest that it misunderstood defendant's burden of persuasion or that it held him to an evidentiary standard that was more stringent than the requirements of section 2-702.

¶ 27     Indeed, it is defendant who misapprehends his burden of proof because he suggests that our outright reversal of his conviction establishes his innocence of the charged offenses. In the proceedings below, defendant maintained that "section 2-702(g)(3) requires only that a petitioner establish by a preponderance of the evidence that he shows [a] finding of being 'not guilty' of the crime." He also asserted that, "[b]ased on the Appellate Court ruling ***[,] defendant is likely to succeed at trial in proving that he was innocent of the offenses charged in the indictment," and that, "[a]t the very least, the Defendant would be found 'not guilty,' which meets the criteria for a Certificate of Innocence." He reasserts this standard in his appellate brief, without citation to

authority, and argues that "evidence submitted and the Appellate Court's ruling on reversing outright the Petitioner's conviction, that under the preponderance of the evidence standard, the Petitioner is entitled to the relief requested."

¶ 28    Defendant is wrong. It is well established that in order to be entitled to a certificate of innocence, among the other requirements in section 2-702(g), the defendant "must prove by a preponderance of the evidence that he is 'actually innocent,' as opposed to circumstances in which the State presented insufficient evidence to convict." *Dumas*, 2013 IL App (2d) 120561, ¶ 18. "[S]ection 2-702 requires a defendant to show by a preponderance of the evidence that he is actually innocent and that he did not act in a way that brought about his conviction. A mere reversal for failure to prove guilt beyond a reasonable doubt will not suffice." *Id*. ¶ 19; see also *Fields*, 2011 IL App (1st) 100169, ¶ 19 ("[T]he plain language of section 2-702 shows the legislature's intent to distinguish between a finding of not guilty on retrial and actual innocence of the charged offenses"); and *Perez v. Illinois Concealed Carry Licensing Review Board*, 2016 IL App (1st) 152087 ("We note that '[a]cquittal does not demonstrate a defendant's innocence" (quoting *People ex rel. City of Chicago v. Le Mirage, Inc.*, 2013 IL App (1st) 093547-B, ¶ 134)).

¶ 29    Although the reversal of defendant's convictions was sufficient to establish the first and second prongs under sections 2-702(g)(1) and (2), this court's previous order does not establish defendant's innocence of the charged offenses. In our prior opinion, we agreed with defendant's "meritorious and dispositive" argument that his trial counsel was ineffective for failing to file a motion to suppress evidence and quash arrest, which would have been successful had counsel filed it. *Hatch I*, 2020 IL App (2d)170932-U, ¶ 39. That determination precluded a retrial where the firearm, along with defendant's statements to the police, would have been suppressed. *Id*. ¶ 40. Based on our holding, there was no need to evaluate whether defendant was exempt from the FOID

Card Act or the Firearm Concealed Carry Act. *Id*. ¶ 2. The reversal of his conviction was based solely on his trial counsel's ineffectiveness—and not on any determination regarding defendant's guilt or innocence. *Id.* ¶ 27.

¶ 30     In seeking a certificate of innocence, the burden was on defendant to establish by a preponderance of the evidence that he was innocent, and he could not rest on our prior order to make that showing. Reversal for failure to prove defendant guilty beyond a reasonable doubt is insufficient to obtain a certificate of innocence. *Dumas*, 2013 IL App (2d) 120561, ¶ 19; see also *Hood*, 2021 IL App (1st) 162964, ¶¶ 28-29 (stating that the burden is on the defendant to show that it was more likely true than not true that he was innocent, and commutation of sentence was insufficient to make such a showing, just as a finding of not guilty is insufficient).

¶ 31     Defendant next argues that, as the result of our supreme court's decision in *Aguilar*, the "AUUW statute of firearm [*sic*] outside the home is void *ab initio.*" Defendant contends that "the statute that he was convicted under was later held unconstitutional" in *Aguilar* and, correspondingly, his acts as charged in the indictment were not unlawful. We observe that several paragraphs of defendant's scant argument on this point appear to have been copied directly from *McClinton*, 2018 IL App (3d) 160548, ¶¶ 20-21.

¶ 32     In *McClinton*, the defendant was convicted of AUUW under the statutory subsection that *Aguilar* later declared unconstitutional, namely 720 ILCS 5/24-1.6(a)(1), (a)(3)(A). *McClinton*, 2018 IL App 3d 160648, ¶ 1. Again, that section of the AUUW statute had effectively prohibited the carrying outside of the home of a firearm which is uncased, loaded, and immediately accessible. See *People v. McFadden*, 2016 IL 117424, ¶ 12. Following *Aguilar*, the appellate court in *McClinton* reversed the defendant's conviction on the grounds that her conviction was premised on a facially unconstitutional statute. *McClinton*, 2018 IL App 3d 160648, ¶ 6. The defendant

thereafter sought a certificate of innocence, which the circuit court denied on the basis that the defendant had failed to establish her innocence of the offense. The appellate court vacated the circuit court's order and remanded for the entry of a certificate of innocence. *Id*. ¶ 22. The court reasoned that the statute the defendant was convicted of was void from the beginning such that her conduct would not have voluntarily brought about a conviction under a statute that was "constitutionally infirm from the moment of its enactment." *Id.* ¶ 20. Further, her acts did not constitute a felony or misdemeanor against the state because the charge was based on a statute that was unconstitutional. *Id.* ¶ 21.

¶ 33 Defendant maintains that he was convicted under the identical statutory subsection as the defendant in *McClinton*. He is wrong. Defendant's AUUW convictions involved different sections of the AUUW statue than at issue in *McClinton*, where the defendant was convicted of the statutory subsection held unconstitutional in *Aguilar*, namely section 24-1.6(a)(1), (a)(3)(A). Conversely, in the instant matter, defendant was convicted of two counts of AUUW for possessing a concealed and loaded firearm while not on his land or in his home (or that of another person as an invitee) without a valid concealed carry license (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5) (West 2014) or a valid FOID Card (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2014).

¶ 34 As we noted in *Hatch I*, although *Aguilar* invalidated the portion of the AUUW that categorically banned the possession of an operable firearm outside the home, our supreme court has emphasized that the right to possess a firearm for self-defense outside the home is not unlimited but is subject to meaningful regulation. *Hatch I*, 2020 IL App (2d) 170932-U, ¶ 26 (citing *Aguilar*, 2013 IL 112116, ¶ 21). The FOID Card Act and the Concealed Carry Act are examples of such meaningful regulation, and Illinois courts have rejected constitutional challenges to these statutory subsections. See *People v. Taylor*, 2013 IL App (1st) 110166, ¶¶ 28-32 (holding that the FOID

Card requirement is a reasonable restriction on the second amendment); *Berron v. Illinois Concealed Carry Licensing Review Board*, 825 F.3d 843, 847 (7th Cir. 2016) (upholding concealed-carry licensure requirement as permissible under the second amendment). Because defendant was not convicted of violating a statute that was later held unconstitutional and, in light of the absence of argument that the portions of the AUUW statute that he *was* convicted under are facially unconstitutional or unconstitutional as applied to him, his second claim of error fails.

¶ 35    Finally, we turn to defendant's third argument, namely that he was statutorily exempt from the AUUW charges because, as a resident of the state of Georgia, he fell within an exception to the FOID Card Act applicable to "[n]onresidents who are currently licensed or registered to possess a firearm in their resident state" (430 ILCS 65/2(b)(10) (West 2020)), as well as an exception to the Firearm Concealed Carry Act which allows nonresidents to transport concealed firearms within their vehicle (430 ILCS 66/40(e) (West 2020)).

¶ 36    Defendant has forfeited review of this issue due to the decrepit state of his argument in this portion of his brief. Again, Rule 341(h)(7) requires that an appellant's brief contain "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." The failure to articulate an argument will result in forfeiture of that argument on appeal. *People v. Oglesby*, 2016 IL App (1st) 141477, ¶ 205. An issue that is merely listed or included in an allegation is not 'argued.' *Id.* at 242. "A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented." *In re Marriage of Auriemma*, 271 Ill. App. 3d 68, 72 (1995).

¶ 37    In his opening brief, defendant provides no citation to any authority from Georgia to support his assertion that he, at the time of the offense, was allowed under Georgia law to possess a firearm without a license. Without citation to any Georgia authority, we are unable to even begin

to evaluate whether defendant fit the exception to the FOID Card Act that is applicable to "[n]onresidents who are currently licensed or registered to possess a firearm in their resident state." *See* 430 ILCS 65/2(b)(10) (West 2020)). Only after the State pointed out the wholesale lack of authority for his assertion did defendant cite any Georgian statute, namely "O.C.G.A. § 16-11-126(a)." However, nowhere in defendant's reply brief does he provide the actual text of the statute relied on or engage in any analysis of it. Instead, he attached to his reply brief a "legal opinion" letter apparently drafted by an attorney licensed to practice law in Georgia. In the letter, the attorney summarily concludes that "it is legal for an unlicensed person to possess and carry a handgun on his or her property or inside his or her home or automobile," as well as states that he "discussed this issue with our District Attorney who totally concurred with [his] opinion."

¶ 38     The State has filed a motion to strike the letter and any argument in defendant's reply brief that is based on it. We grant the State's motion because the letter was not part of the common law record and does not constitute a proper legal source. See *People v. Garcia*, 2017 IL App (1st) 133395, ¶ 35 (attachments to briefs cannot be used to supplement the record, and this court cannot consider evidence that is not part of the record); *People v. Davis*, 65 Ill. 2d 157, 165 (1976) (documents containing readily verifiable facts from sources of accuracy may be judicially noticed). Neither the confidence of the attorney who drafted the letter nor that of the official who purportedly "totally concurred" with that attorney may displace the necessary reasoned analysis and citation to pertinent authority required by Rule 341(h)(7), and defendant's reliance on it is fatal to his argument.

¶ 39     Even if defendant had established that he (1) is a resident of Georgia; and (2) was allowed to possess a firearm in Georgia under Georgia law without a license on the date of the offense, the appellate court in *Wiggins* rejected the identical argument that defendant apparently attempts to

make here regarding his failure to possess a FOID Card. There, the court held that the exception in the FOID Card Act that is applicable to nonresidents "currently licensed *** to possess a firearm in their resident state" applies only to nonresidents "who have complied with a required governmental process and received an official license from their home state to possess a firearm." *Wiggins*, 2016 IL App (1st) 153163, ¶ 43. Curiously, defendant did not mention *Wiggins* in his opening brief, notwithstanding the fact that the circuit court relied on it in granting the State's motion *in limine* that sought to bar evidence that he was a Georgia resident and any argument that he was therefore exempt from the FOID Card Act, as well as relied on it in denying defendant's petition for a certificate of innocence. Defendant does acknowledge *Wiggins* in his reply brief, but he offers no argument that it was wrongly decided or that this court should decline to follow it. He instead points out that *Wiggins*, in reaching its holding, expressly disagreed with the federal district court in *Mishaga v. Schmitz*, 136 F. Supp. 3d 981 (C.D. Ill. 2015), which concluded that the exception in section 2(b)(10) of the FOID Card Act is applicable to nonresidents who are authorized by their resident state to possess a firearm without a formal license or registration requirement. Defendant makes no argument that we should follow *Mishaga*, but instead asserts that *if* we agreed with its holding, we "would conclude" that he is "licensed to possess a firearm by the State of Georgia." In the absence of any analysis or argument that we should follow *Mishaga,* which is non-binding foreign authority, we decline defendant's invitation to ponder what we "would conclude" had he presented a cohesive legal argument supportive of his position.

¶ 40                                    III. CONCLUSION

¶ 41    For the above reasons, we affirm the judgment of the circuit court of Kane County.

¶ 42    Affirmed.